## No. 17,433.

ORESTE PIZ *v*. HOUSING AUTHORITY OF THE CITY AND COUNTY OF DENVER.

(289 P. [2d] 905)

Decided November 7, 1955.   Rehearing denied December 5, 1955.

458

Mr. Fred M. Winner, Mr. Clement R. Hackethal for plaintiff in error.

Mr. Clifford W. Mills, Messrs. Donaldson, Hoffman & Goldstein, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

In the trial court the defendant in error, Denver Housing Authority, was plaintiff, and plaintiff in error Piz was defendant in an eminent domain proceeding wherein the Housing Authority sought to condemn the Piz property as part of a vast, low cost housing project. After trial and a verdict, fixing the value of the Piz property, the trial court on motion of the Housing Authority dismissed the action over the objection of counsel for Piz. Piz brings the cause here on writ of error.

The undisputed facts as disclosed by this record are: In the year 1951 the Housing Authority of the City and County of Denver, Colorado, determined it would build a large, low cost housing project and that it would, as a part of said project, acquire the property of plaintiff in error (hereinafter referred to as Piz). In the following year, 1952, the Housing Authority entered into negotiations with Piz for the purchase of his property which consisted of certain lots on Mariposa Street on which he had erected a structure which housed a bakery and certain dwelling units. For a period of twenty years Piz and his son continuously operated this bakery. They specialized in making french bread and hard rolls for the restaurant, hotel and club business in and around Denver. The manufacture of these products required specialized equipment, unfitted to most bakery uses. Among this special equipment was a massive sixty-one ton oven, which was erected on a three-foot concrete block. It consisted of a steel frame, alongside of which special brick were laid and bonded together with a special mortar. An insulating barrier for this oven was composed of several tons of silica. During the many years of its operation the heat generated caused the bolts used in the steel frame to fuse so that the oven could not be moved. Evidence discloses that for this period of twenty years the oven had not been permitted to cool, and that had it been allowed to cool it would, for purposes of resale, be worthless separate and apart from the building. The Piz property also contained a refrigeration room used in connec-

tion with his business. This consisted of an apartment with twelve inch walls, the exterior of which was made of cinder block, the interior lined with an eight inch layer of cork. The floor of the refrigeration room was concrete over which a layer of cork was laid, and on top of the cork was another four inch slab of concrete. This room was cooled by built-in coils and plates, attached by permanent piping to a compressor located outside the room. The jury to whom the issue was submitted found from the evidence that the oven and the refrigeration room were fixtures and a part of the real estate sought to be condemned. The correctness of this special finding of the jury is not and cannot be disputed.

The Housing Authority in its negotiations for the purchase of the Piz property, prior to the institution of the condemnation action, offered Piz $27,500 for his property. Plaintiff in error insisted on a minimum payment to him of $50,000. The parties were unable to agree on the sum to be paid, and a negotiator for the Housing Authority advised Piz that if the Authority could not purchase the property at an agreed price, it would be condemned. The Housing Authority refused to raise its offer of $27,500, stating that it would not pay for the fixtures. After the condemnation suit was started the Authority applied to the trial court for an order for immediate possession of the Piz property. Witnesses for the Authority on this hearing testified that the entire area included in the proposed housing project was necessary therefor; that contracts pursuant to plans adopted had been let for the construction of the entire project; that a portion of the construction included in the contract was for improvements on the Piz property; that demolition of the adjacent properties was already in process, and that it was essential and necessary that the Piz property be acquired and immediate possession had in order to go ahead with the work on the project then in progress.

The trial judge denied the motion for immediate possession of the Piz property. Work proceeded on the other

properties around and adjacent to the property of Piz, according to the plans and contracts of the Authority.

A jury trial of the issues in the Piz condemnation case was had in August, 1952, by which time the surrounding property had been acquired either by purchase or under orders for immediate possession under condemnation proceedings. On the trial there was little if any difference in the values as fixed by the appraisal witnesses called by the respective parties. The value of the land and improvements owned by Piz, exclusive of the oven and the refrigeration room, was fixed at $32,000 by all witnesses, including those offered by the Housing Authority. The jury was properly instructed and returned its verdict finding that the fair market value of the building, lands and fixtures was $58,860. Upon return of the verdict, the Authority was granted thirty days to file a motion for new trial. Apparently convinced there was no error in the record which would justify such a motion, the Housing Authority on the 29th day after the verdict was returned filed a motion to dismiss its proceeding against Piz.

Appropriate objection was made to the granting of this motion. It was claimed the Housing Authority was estopped to dismiss the condemnation proceeding because Piz had substantially changed and altered his position as a result of the condemnation suit; that with full knowledge of the Authority he had built a new plant to replace his bakery which was the subject matter of the action; that this new bakery was built solely because of the condemnation and the insistence of the Authority that the Piz property was absolutely essential to the project; that the attempted dismissal was not in good faith and was retaliatory because the Authority was dissatisfied with the award of the jury, and that it was dictated by the Public Housing Authority of Washington, D.C., and not by the Denver Housing Authority.

The trial court heard testimony in connection with the motion to dismiss. At that hearing it was admitted by

the Authority that it knew Piz was building a new bakery. A witness for the Authority admitted that the Piz acquisition was the only one ever abandoned by the Authority over the objection of the property owner. It is manifest from the record that the Authority was well informed that Piz was building a new bakery and it cannot be doubted from the testimony that Piz was honestly of the belief that in due course his property would be acquired thru the condemnation proceedings, and if he did not protect the business he had established over a score of years, he would be out of business.

Among other matters found by the trial judge, we note the following: "I dont think there was any reason for these people to rely on any statements of the Housing Authority as to what they were going to do. I think nothing has been shown that these statements weren't made in good faith. The Housing Authority intended, as far as the evidence goes, to pursue this remedy and take this property. Then when they discovered the amount of the award, they were unwilling to pay it. Piz built his new bakery in Lakewood in good faith, and in the belief that the Housing Authority was going to take his existing bakery in condemnation." The trial court also found that "The property of respondent was the only part of the housing project in this case which was abandoned and the decision to abandon was made after the recommendation of the Public Housing Authority to the Petitioner and with approval of the Public Housing Authority."

The trial judge granted the motion to dismiss holding that no estoppel was shown. From the judgment of dismissal counsel for Piz bring the cause here.

The objective of the Housing Authority was the construction of a low cost housing project. It never abandoned this objective. It is frankly admitted by counsel for the Housing Authority that the Piz property is the only one in this vast enterprise which was abandoned, and it is manifest that the misfit situation was brought

about merely because the Housing Authority was dissatisfied with the award of the jury.

Counsel for Piz concede that in the usual condemnation case, where the property owner has not changed his position in good faith reliance on the condemnation suit, the condemnor may abandon the action at any time prior to the time the rights of the parties are reciprocally vested, but insist this is not the usual case. It is here contended that the doctrine of estoppel in pais prohibits the abandonment of this case without the consent of Piz.

In *Johnson v. Neel,* 123 Colo. 377, 229 P. (2d) 939 we held that the doctrine of estoppel in pais will always be applied to prevent fundamental injustice. There, Mr. Justice Moore speaking for the court, stated: "We are of the opinion that under the peculiar facts of this case the doctrine of estoppel in pais is applicable and controlling. This doctrine is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result. In 19 American Jurisprudence, page 640, we find the following statement: 'Generally speaking, however, equitable estoppel is a rule of justice which in its proper field prevails over all other rules.' The doctrine of equitable estoppel has been invoked to cut off rights or privileges conferred by statute, and constitutional rights may be effectively waived by conduct consisting of action or failure to act. *Munsell v. People,* 122 Colo. 420, 222 P. (2d) 615; *Kalloch v. Elward,* 118 Me. 346, 108 Atl. 256, 8 A.L.R. 750; *Wilson v. Philadelphia School District,* 328 Pa. St. 225, 195 Atl. 90, 113 A.L.R. 1401. 'A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right.' *Kalloch v. Elward, supra.*"

The rule permitting abandonment of a condemnation proceeding before rights of the parties are vested is one resulting from the usual situation where the landowner has not changed his position because of the threatened

taking. The cases wherein we have permitted a dismissal over the objection of the landowner were those where the owner had not built a replacement facility solely because of the pending condemnation proceeding.

Counsel for the Housing Authority in their brief state that the doctrine of eminent domain is an economic necessity in our civilization and that without it we would have no schools, railroads, streets or alleys and that without it the "public would be at the mercy of every private land owner.' They also state: "Where parties refuse to agree to sell to the public on a reasonable basis, *there must be some means* by which the condemnor may be able to ascertain the price for which it may acquire the desired property, and if the price is beyond the *limited means of the condemnor*, then there should be the right to abandon the project."

In the instant case there was no abandonment of the project. What the Housing Authority decided was that it would not take over the Piz property, but build around it and leave Piz high and dry with the two bakeries on his hands. We fail to find anything in the record to indicate that the Housing Authority had "limited means" to pay for this property and surely this Housing Authority had "means by which the condemnor may be able to ascertain the price for which it may acquire the desired property." They had agents, appraisers, attorneys and others who knew all about the Piz property, what it embraced and what would be included in the compensation the Housing Authority would have to pay. Private landowners are as much at the mercy of a condemning agency as is the public at the hands of a private property owner.

██ Under the record as here made the Housing Authority was fully aware of the existence of the sixty-one ton masonry oven structure, together with the refrigeration room. It was apparent that these constituted fixtures and were a part of the realty. It also knew that pursuant to its insistence that the property be con-

demned, Piz was building a new bakery. Being thus aware, the condemning authority may not frivolously chaffer with the property owner and then merely because it is dissatisfied with the award made by the jury, on competent evidence, dismiss the action. If, under the circumstances revealed by this record a dismissal were to be approved by the courts, the property owner would be without protection under the law. He would be at the mercy of the condemning authority and subject to its whim and caprice.

In the early case of *Denver & N.O.R. Co. v. Lamborn,* 8 Colo. 380, a dismissal was permitted as to unimproved property where the owner had not acted to his prejudice because of the threatened condemnation. The court in that case said: "* * * when cases arise wherein any of the abuses feared are not expressly provided for, the courts will doubtless devise some means for giving the landowner ample protection." The somewhat harsh rule in the Lamborn case was relaxed in *Heimbecher v. Denver,* 97 Colo. 465, 50 P. (2d) 785. There, Denver tried to condemn property and was not satisfied with the award. The award as returned by the jury was affirmed, whereupon Denver sought to abandon the proceeding. The proceeding was under the Towns and Cities Act and it was held that the City was too late in its attempt to abandon, but aside from the statutory provisions, it was held: "But that language (of the Lamborn case) is broader than the situation which was then presented to us required, and must be read and limited in the light of the particular facts then before the court, and the law then in force * * *. We can neither affirmatively, nor silently acquiesce in the city's present stand. We hold that, by dealing as it did, the city has lost its right to withdraw or abandon. Moreover we have searched in vain for substantial evidence to indicate the existence of a sufficient withdrawal or abandonment. Both because the statute, as properly interpreted, is in itself decisive, and because the facts and circumstances of the litigation

also require it, and for the reasons stated, the district court is held to have erred in not issuing a peremptory writ of mandamus commanding the council to pass a proper appropriation ordinance." It, therefor, appears that the doctrine of the Lamborn case, was relaxed and the rule announced that where the facts and circumstances of the litigation require it, an abandonment or dismissal will not be permitted.

█    The right to abandon condemnation proceedings may be relinquished by agreement or lost by estoppel. The instant case, as well as *Heimbecher v. Denver*, supra, are exceptions to the general rule which permits abandonment of the project by the condemnor. In the instant case the Housing Authority did not abandon the entire project, but pursuant to its plans forcibly announced to Piz, demolished the surrounding properties and constructed the housing unit (which embraced several square blocks) around the Piz property, apparently a misfit in the scheme of things as .planned, pleaded and testified to by the Housing Authority.

*Times-Mirror Co. v. Superior Court of Los Angeles,* 3 Cal. 2nd 309, 44 P. (2d) 547 is a case directly in point. There, suit was filed to condemn the newspaper plant of the Times-Mirror Co. and the city sought to acquire only the land and building, exclusive of the heavy machinery used in publishing the newspaper. Times-Mirror Co. claimed the city should be made to pay for the machinery, and proceedings were brought to determine whether this machinery constituted fixtures. The original case went to the Supreme Court of California which held that the Times-Mirror Co. should be paid for its machinery.

When it was judicially determined that the City of Los Angeles would have to pay for such heavy machinery and fixtures as were annexed to the realty, it decided to dismiss the proceeding. Meanwhile Times-Mirror Co. had constructed a new plant and equipped it. The effect of the dismissal left the newspaper company stranded with two plants, just as in the instant case. The trial judge

in the Times-Mirror case permitted the case to be dismissed and the newspaper company had the case reviewed in the Supreme Court of California, which held that the city was estopped to refuse to take the newspaper plant, the Times-Mirror Co. having meanwhile built and equipped a new plant because of the condemnation proceeding. We quote at length from the Times-Mirror Co. opinion, as follows: "While this is a mandamus proceeding in form, it is in reality a proceeding instituted for the purpose of compelling the continuation of the condemnation proceedings entitled *City of Los Angeles v. Klinker,* reported in 219 Cal. 198, 25 P. (2d) 826, to a final order of condemnation.

"At the appointed hour, July 16, 1934, counsel for respondent city addressed the court, stating that he had served upon defendant and filed in court a notice to dismiss the proceedings . . . Counsel for petitioner opposed the granting of the motion of dismissal made upon said written notice of abandonment, on the ground that it was not given or made within the time prescribed by section 1255 (a), Code of Civil Procedure, and *on the further ground that said city was estopped by its acts and conduct from abandonment....*

"The case of *City of Los Angeles v. Cohn,* 101 Cal. 373, 35 Pac. 1002, determines the right of a citizen or private party to invoke the principle of estoppel in pais in exceptional cases where justice and right require. . . . The decision so well expresses the principle which equity impels us to apply to the facts in the instant case that we feel justified in quoting therefrom at considerable length:

" 'The foregoing principle is well illustrated, and strongly put, by Dillon in his work upon Municipal Corporations (§675), wherein it is said:

"It will, perhaps, be found that necessities sometimes arise, of such a character that justice requires that an equitable estoppel shall be asserted, even against the public; but, if so, such cases will form a law unto themselves, and do not fall within the legal operation of lim-

itation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle; *but there is no danger in recognizing the principle of an estoppel in pais, as applicable to exceptional cases, since this leaves the courts to decide the question,* not by the mere process of time, but upon all the circumstances of the case, to hold the public estopped or not, as right and justice may require." The author cites many cases to support the text, and upon examination of these citations we find the principle recognized and approved, especially by the decisions of the Illinois court.' . . .

"The unusual circumstances in this case would require the application of the doctrine announced in *City of Los Angeles v. Cohn,* supra, even though no such precedent existed Equity does not wait upon precedent, which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention. 'It has always been the pride of courts of equity that they will so mold and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.' *Humboldt Sav. Bank v. McCleverty,* 161 Cal. 285, 119 Pac. 82 . . .

"At no time was there a suggestion of the possibility of abandonment, but at all times and upon all occasions whenever the project was discussed it was treated as a foreclosed matter. *In fact, properties adjoining petitioner's property, and within the area of the civic center, were either purchased or acquired by condemnation.* Said properties without the acquisition of petitioner's property to complete the plan and design of the civic center has brought about an incongruous situation never contemplated by any one. . . .

"Notwithstanding the many conferences and communications with the president and manager of petitioner

by the city and county and their agents, and without the slightest suggestion given to petitioner that there was a remote possibility of the abandonment of the plan, petitioner was lead to believe that the taking of its property must inevitably ensue. *We do not mean to say that the city or its agents or any of the parties promoting the project acted in bad faith or willfully intended to mislead petitioner. In fact, it was the sincere enthusiasm with which the project was carried forward that inspired all with confidence that the completion of the plan was certain. This, however, does not remedy the damage suffered by petitioner.* Petitioner had no part in the fortuitous circumstances which seemed to have been the cause of the dismissal of the action on the day it was called for retrial.

"*It unquestionably appears from the foregoing that petitioner in good faith constructed the new building upon the understanding that the site of the old building was included in the civic center plan and it was necessary from the nature of the business in which it was engaged that it should prepare in due time to relocate its plant. That it was justified in so concluding and that the city is bound by the rules of equity to prosecute said condemnation causes to final judgment seems wholly within the realm of reason . . .*

"*Our decision, based on the ground of estoppel, is determinative of petitioner's right to have the trial proceed* . . . The petitioner is entitled to the issuance of a peremptory writ of mandate compelling the respondent superior court of the State of California, County of Los Angeles, to proceed with the trial of said condemnation proceeding."

This, we believe, is the only case in the country which squares with the facts of the case at bar. California permits the dismissal of a condemnation case under ordinary circumstances at any time before the rights of the parties have been vested. However, where all parties acted in good faith, and, as here, the condemning party wished to

abandon the condemnation after learning that the owner was entitled to compensation for his heavy machinery and equipment, the Supreme Court of California (applying the doctrine of estoppel in pais) held that the case could not be abandoned where the defendant had built a replacement plant.

■ In the case at bar, the trial court found that both parties were acting in good faith, and that Piz constructed a new bakery because of the pending condemnation of his bakery. The trial court found that Piz was justified in believing that his property would be taken, and to paraphrase the language of the California Supreme Court: It unquestionably appears from the foregoing that Piz in good faith constructed a new building upon the understanding that the site of the old building was included in the Housing project plan and it was necessary from the nature of the business in which Piz was engaged that he should prepare in due time to relocate his plant. That he was justified in so concluding and that the Housing Authority is bound by the rules of equity to prosecute said condemnation case to final judgment, seems wholly within the realm of reason.

■ The instant case is in all particulars identical in its facts with *Times-Mirror Co. v. Superior Court of Los Angeles, supra.* Reason, equity and good conscience require us to follow the rule laid down. In the Times-Mirror case the city was constructing a civic center, in the instant case a large housing project covering several blocks of ground was initiated and proceeded to completion. The trial court found every fact necessary for the creation of an estoppel in pais in favor of Piz. It found that the Housing Authority represented to Piz that his property would be taken; that a condemnation suit was instituted; that properties surrounding Piz' bakery were demolished by the Housing Authority before trial of the Piz case; that Piz believed and relied on the representation of the Housing Authority; that the Housing Authority demanded (but was denied) immediate possession of

the Piz property; that Piz substantially changed his position in reliance on the acts and representations of the Housing Authority, and in good faith built a new bakery.

■ These facts present all of the elements of an estoppel in pais as defined by Mr. Justice Alter in *Chamberlain, et al., v. Poe,* 127 Colo. 215, 256 P. (2d) 229. An actual intent to mislead or defraud is not essential to the creation of an estoppel in pais.

The conclusion of the trial judge that Piz had to prove bad faith, or willful misrepresentation, on the part of the Housing Authority was expressly repudiated in *Times-Mirror Co. v. Superior Court of Los Angeles, supra.*

■ It was suggested by the trial court that estoppel against a governmental agency should be permitted only in extreme cases. Whether the Housing Authority is a governmental agency, we need not decide. We have in this state ample authority for the proposition that estoppel against such an agency may be applied in a proper case. *Fairplay v. Board of County Commissioners,* 29 Colo. 57, 67 Pac. 152; *Board of County Commissioners v. City and County of Denver,* 30 Colo. 13, 69 Pac. 586; *City of Colorado Springs v. Colorado City,* 42 Colo. 75, 94 Pac. 316; *Van Gilder v. City and County of Denver,* 104 Colo. 76, 89 P. (2d) 529; *City and County of Denver v. Park Hill Golf Club,* 127 Colo. 592, 259 P. (2d) 617. Estoppel was applied against the City of Denver in an eminent domain proceeding *Heimbecher v. Denver, supra.* If estoppel applies to the City and County of Denver, it surely applies to the Housing Authority.

■ Common justice in a case such as this demands that the property owners objection to the dismissal of the eminent domain proceeding should be sustained. The Housing Authority commenced the action, fully aware of the nature, value and extent of the several properties to be included in the project. Its agents endeavored to get Piz to agree to $27,500 as a price for his property, but he insisted that his property was worth at least $50,000. The representatives of the Housing Authority then threat-

ened him with court proceedings, after they had informed him they did not want his oven or his refrigeration room, to which Piz in his quaint, though prophetic way, replied: "I'm not afraid to go to court. Lot of human beings there, too." His prophecy came true, for the jury awarded him, on competent evidence not challenged, an adequate amount. The once insistent Housing Authority was then dissatisfied with the award, and in effect told Piz that the award of the "human beings" was too high, and with the dismissal as ordered by the trial court, Piz had two bakeries on his hands, only one of which he had voluntarily acquired.

We conclude that under this record the trial court erred in dismissing the action. The judgment is reversed and the cause remanded to the trial court with direction to vacate the order of dismissal and to enter judgment on the verdict in favor of Piz.

Judgment reversed and cause remanded with directions.