No. 17,979.

City and County of Denver, et al. *v.* L. C. Stackhouse.

(310 P. [2d] 296)

Decided April 22, 1957.

Mr. John C. Banks, Mr. Earl T. Thrasher, for plaintiffs in error.

Mr. Jean J. Jacobucci, Mr. Donald W. Marshall, for defendant in error.

*En Banc.*

Mr. Chief Justice Moore delivered the opinion of the Court.

We will refer to defendant in error, plaintiff in the trial court, as plaintiff, and to plaintiffs in error, defendants in the trial court, as defendants or by name.

Plaintiff in his complaint sought to have a certain building permit declared valid; he also sought a decree enjoining defendants from in any manner interfering with the construction of the building authorized under that permit.

In his complaint plaintiff alleged: The capacities of the various parties; the enactment by the municipality of a zoning ordinance pursuant to charter authority; his desire to erect a four unit multiple dwelling on a designated parcel of property; that inquiries were made as to the zoning classification of this property; that he and his broker were informed by defendants that the described property was in a Residence "C" district where the proposed use was permissible; that relying on this information he purchased the property February 10, 1955, obtained a building permit from defendants and has expended the sum of about $18,000.00 in constructing the building; that on June 14, 1955, he was ordered by defendant Zoning Administrator to discontinue construction for the reason that such construction was in violation of requirements of the zoning ordinance applicable to Residence "B" districts; that he appealed the aforesaid order to the Board of Adjustment and that said Board sustained the action of the Zoning Administrator; that he has no plain, speedy or adequate remedy at law; that the action of the Board of Adjustment was invalid and that defendants should be decreed to be estopped and precluded from recalling or revoking the building permit issued to him.

Defendants filed a motion to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted. This motion was argued,

taken under advisement, and denied. Defendants then filed their answer. As a first defense they placed in issue all material allegations of the complaint. As a second and additional defense, they alleged that under the charter and the zoning ordinance of the municipality, a Board of Adjustment has been established to hear and determine all appeals from the Department of Zoning Administration; that plaintiff had availed himself of this appellate procedure and had suffered an adverse decision in that the Board sustained the Zoning Administrator; that plaintiff has or had a plain, speedy and adequate remedy at law relating to an appeal from the Board and that that remedy was exclusive of all other appellate procedures.

An ordinance of the City and County of Denver pertinent to the issues reads as follows (Ordinance 117, Series 1954, Sec. 2-1):

"No permit or certificate, the use of which may be subject to ordinances, shall be isued by the Chief Building Inspector until the Department of Zoning Administration has certified that the use to be made of the permit or certificate is made in full compliance with this ordinance."

Under other applicable zoning ordinances the four unit multiple dwelling which plaintiff started to erect under his permit could be built upon a lot having 4,000 or more square feet if situated in a Residence "C" district, but if situated in a Residence "B" district, a minimum area of 12,000 square feet was required for such a building. The area of the lot in question was approximately 4,700 square feet; hence the proposed structure was within the terms of the ordinance if erected in a "C" district, but not, if erected in a "B" district.

There is no dispute in the pertinent facts. Plaintiff instructed his real estate broker to ascertain that the lots were zoned as Residence "C"; plaintiff himself inquired of the defendants as to the zoning covering the specific lots and was informed that it was Residence

"C"; the zoning map which he had theretofore secured from the city showed a "C" designation; and after taking these precautions he purchased the lots for the express purpose of building the four unit multiple dwelling. He then prepared his plans for the building, and plot plan, which were submitted to the defendants with his application for the building permit. The official then in charge of the city's zoning office checked the plans and consulted the zoning map which was kept back of the counter where it was not available to plaintiff. This official then informed plaintiff that the property was in a "C" district and he then endorsed upon plaintiff's plans the required certificate that the zoning was proper. The building permit was thereupon issued authorizing the erection of the four unit multiple dwelling upon the lots specifically described.

The permit which was actually issued authorizing the building to be erected also stated that the property was located in a "B" district. The only evidence which bears upon the question of the knowledge of plaintiff that this reference to a "B" district was in the permit was the testimony of plaintiff who said that he never saw it, or read it, until four months after its delivery to him when he was ordered to stop building; that its function was only as a receipt; that he had no reason to examine it; and that a document which is used as a building card (furnished with the permit) is posted on the job for inspection purposes.

Plaintiff proceeded with the construction until June 14, 1955, about four months after the permit was issued, when he received an order from the city to cease construction; the reason assigned for the order being that upon further checking it had been found that plaintiff's building was in the wrong zone and that the permit had been issued in error.

Plaintiff's summary of the argument for affirmance of the judgment contains, inter alia, the following:

"1. The doctrine of estoppel is applicable against a

municipality attempting to revoke a permit upon which the permittee has reasonably relied in making substantial expenditures. * * *

"2. Plaintiff's remedy in this case is derived from equity, and constitutional and charter rights. The board of adjustment has no equity jurisdiction, nor power to review the validity of the ordinance. The 'appeal' procedure provided by the ordinance could not offer any relief to plaintiff in his situation. Hence his resort to the courts by this action was proper. * * *

"3. * * * Defendants made a determination upon certain evidence and granted the permit. Four months later, upon the same evidence, they attempted to reverse their first determination and revoke the permit. This is prohibited by the established law of Colorado, plaintiff having expended substantial sums in the interim in reliance on the permission."

Defendants deny the correctness of these assignments and urge that plaintiff's exclusive remedy was to seek review of the action of the Board of Adjustment which upheld the order revoking the permit.

Questions to be Determined.

First: *Under the pertinent undisputed facts of this case, was the trial court correct in holding that defendants were estopped to contest the validity of the permit issued to plaintiff?*

This question is answered in the affirmative. While it may be true, as argued by counsel for defendants, that "The doctrine of estoppel is not applied as freely against a municipal corporation as against an individual," it is, nevertheless, well established in the law that the doctrine of estoppel in pais is fully applicable against a municipality if it is necessary to invoke it to prevent manifest injustice. *Piz v. Housing Authority,* 132 Colo. 457, 289 P. (2d) 905. In *Piz v. Housing Authority, supra,* numerous decisions of this court are cited which fully sustain resort to the doctrine of estoppel

against governmental agencies to prevent injustice. This is such a case.

Second: *Was the trial court correct in rejecting the argument of counsel for defendants that plaintiff's sole remedy was to seek review of the proceedings before the Board of Adjustment?*

■ This question is answered in the affirmative. The limited jurisdiction of the Board of Adjustment, created and deriving all of its powers from the city charter, extended no further on "appeal" than to determine whether the Zoning Administrator's original action in granting a permit for a "C" district type structure in a "B" district was erroneous as measured by the terms of the zoning ordinance. But the terms of the ordinance are plain on this subject and there could be no dispute but that the Board, having resort solely to the terms of the ordinance, would of necessity be bound to find that the permit was in error. And, in any further "appeal" under the ordinance-prescribed certiorari procedure, the court, under Rule 106 (4), R.C.P. Colo., would be confined to a review of the record upon that same restricted issue, and likewise could only affirm that the permit did not comply with the ordinance terms.

What "adequate remedy" then, was available to plaintiff by an ordinance-appeal when the board was powerless, because of its restricted jurisdiction, to do anything other than affirm that the permit did not comply with the requirements of the ordinance?

In *Hedgcock v. People*, 91 Colo. 155, 13 P. (2d) 264, this court stated, inter alia:

"It is claimed in behalf of the building inspector that mandamus does not lie, and that Reed's only remedy is to be found in the charter of Denver. The charter provisions allow an appeal from the building inspector to a so-called board of adjustment, and the decisions of that board, the charter says, may be reviewed by a court of record by certiorari. Municipal Code 1927, pp. 115-119. It is argued that, unless the procedure outlined in the

charter be pursued, and within the time which it fixes, one aggrieved by the action of the building inspector is precluded and resort to mandamus, as attempted here, is unavailing. The first answer is that a city charter cannot repeal provisions of the Civil Code, nor control jurisdiction of courts. *People v. District Court,* 78 Colo. 526, 242 P. 997. Secondly since in the circumstances of the record the ordinance sought to be enforced by the building inspector, as determined below, and approved here, was inapplicable, the board of adjustment was without power to consider the situation. * * * and in *Williams v. Gage, Building Inspector,* 3 N.J. Misc. 1095, 130 Atl. 721, where it was contended, as here, that 'certiorari of the action of this board is the proper remedy,' that court said that certiorari 'would be inefficacious. It is not the proper remedy.' * * * Such a board, the court said, has 'no authority or jurisdiction to act as an appellate body for the purpose of reviewing the legal or equitable character of the building inspector's act in allowing or rejecting an application for a building permit, nor to pass upon the question as to whether the provisions of the zoning ordinance are in furtherance of the proper exercise of the police power of the municipality.' "

Obviously, the Board of Adjustment has no jurisdiction to entertain plaintiff's equitable right of action. Being without jurisdiction of it, the "appeal" proceedings to which plaintiff was induced to submit before the board were a nullity, and could in no manner preclude his right to prosecute his action in a tribunal having proper jurisdiction.

The judgment is affirmed.