No. 19,492.

J. L. FRANKS, ET AL. *v.* CITY OF AURORA.
(362 P. [2d] 561)

Decided June 5, 1961.

26

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, Mr. JOHN S. KELLOGG, Mr. THOMAS B. MASTERSON, for plaintiffs in error.

Mr. BERNARD V. BERARDINI, Mr. GEORGE B. LEE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE controversy before us arises from an action in which three plaintiffs, landowners, claimed damages for flooding from the plaintiffs in error and the City of Aurora, named as a co-defendant. In that cause the City of Aurora (here referred to as Aurora or City) filed a cross claim against the plaintiffs in error (here referred to as defendants). All issues in the case were settled except those between Aurora and the defendants. This latter litigation resulted in a judgment in favor of Aurora and against defendants in the amount of $4,000.

The facts are not disputed. Aurora owned a parcel of unimproved property which is here called "the lots."

Abutting such lots at opposite boundaries was a city-owned and maintained drainage culvert underground in the form of a 6 foot by 9 foot oval-shaped arch, through which drainage waters were conveyed. Connecting this corrugated pipe and crossing the lots involved in this litigation was an open ditch "link."

In April, 1955, defendants, who were desirous of purchasing the lots, wrote a letter to the City Council proposing to purchase them under terms and conditions as follows:

"We propose to offer $5500.00 for Lots 1-10 and 12-15, Block 36, City of Aurora, Colorado. We plan to build doubles on these lots and we will also connect the two culverts the same *as is*." (Underscoring ours.)

On April 18, 1955, the City Council accepted the offer. This is expressed in a resolution which appears in the minutes of the City Council and reads:

"* * * that offer be accepted. Purchaser to place culvert (across Lots 1-3) of the same size as now in Beeler Street."

Deed of conveyance was issued by the City to the purchasers, and they proceeded to carry out their obligations. They first sought out the City Manager for instructions and approval of their proposed plans and specifications for the culvert to be installed across their lots. The City Manager referred them to the City Engineer. The city engineer after examination rejected their plans and himself designed the pipe which was installed by them. This consisted of a five-foot circular concrete pipe, about sixty-four feet in length. Connection was made at each end with the existing metal arch pipes by inserting the circular concrete pipe into the arch openings, and pouring concrete into the void thus left at the connections, so forming an unbroken, continuing tube. All this was done at the direction and by dictate of the city engineer. The result, of course, was a 64 foot connection between two metal culverts by a smaller tube. Following these procedures, and before covering up the

new installation with earth fill, the Engineer made an inspection, found "some minor difficulties" and suggested corrections which, according to the only evidence in the case, were carried out by defendants.

The end result, following heavy rains, was a flooding of the neighborhood, due allegedly to the failure of the smaller connecting link to adequately convey the runoff from the larger pipe, because of accumulation of debris, trash, automobile tires, lumber and litter at the junction of the larger and smaller pipes.

By its cross claim, Aurora alleges that the defendants failed and refused, in a wanton, reckless disregard of the rights and interests of such City, to construct a culvert of the same size as then existed on abutting and adjacent property, and have wantonly and recklessly constructed and installed a culvert of inadequate size and improper design under and across said property; and that if not compelled to do so, the City will suffer great and irreparable injury and damage and a multiplicity of suits. Judgment was asked for $1000 exemplary damages, that the defendants be required to perform their agreement by reconstructing the culvert, or for damages of $7500.00.

Briefly stated, the finding of the trial court was that a contract resulted from the acceptance of the original offer by Aurora which obligated these defendants to place a culvert of the same size as the two connecting ends; that while the defendants may have relied upon authorization or approval in change of specifications by the City Engineer, he, neither in fact nor in law, was shown to have power or authority to vary the specifications, and that if he did the authorization was verbal and not recognizable under the Statute of Frauds. Pursuant to such findings the court adjudged that the defendants proceed to specific performance of the contract as the court found it to be or suffer judgment against them in the amount of $4000. In this the trial court erred.

The part of the contract before us relating to the cul-

vert construction provided for installation of the pipe "as is" and of the same size as the abutting culverts. Defendants, plainly with a conscious desire to strictly comply, sought out the authorized agent of the other party to the contract, and displayed their plans. That agent did not accept them, rather substituted others. Defendants then proceeded with construction according to the substituted plans of the agent, and having done so, sought again the approval of the other contracting party, the beneficiary of the work. Again, minor repairs were suggested and made, thus completing the project.

In considering whether the undisputed facts result in defendants' liability, it may be assumed that the engineer had no actual authority to modify the terms of this contract. The council and not the engineer was the contracting authority; the latter could not have entered into the contract in the first instance, hence he was not expressly empowered to materially modify it. Aurora then operated a council-manager form of government. The manager was responsible to council for the administration of all affairs of the city. His duties required him to supervise the carrying out of policies previously set by the council. C.R.S. '53, 139-6-11, 13. Assuming, therefore, that neither the manager nor the engineer had authority to change the terms of this contract, it is reasonable nevertheless to conclude that the defendants were justified in relying on the authority of the manager and engineer to instruct and supervise the engineering detail incident to the carrying out of this project.

It seems inconceivable that a municipal corporation can virtually supervise every detail of performance of an entire project and can long thereafter repudiate the supervisory authority of its own engineer adopting in retrospect the position that a contracting party should have disregarded the instructions. of its own agent and should have adhered to the original specifications notwithstanding the engineer's disapproval. As we view it, the undisputed facts support a conclusion of justifiable

reliance on the appearance of authority which was exhibited to these defendants.

■ Does the doctrine of apparent authority or the corrollary principle of equitable estoppel bar a municipal corporation from enforcing an obligation by taking a position contrary to a previous representation relied on by the contracting party to his detriment? *City and County of Denver v. Stackhouse,* 135 Colo. 289, 310 P. (2d) 296, holds that it does. There a building permit was erroneously issued contrary to zoning regulations. The plaintiff expended money in reliance on it. In upholding a judgment validating the permit this Court said:

" * * * While it may be true, as argued by counsel for defendants, that 'The doctrine of estoppel is not applied as freely against a municipal corporation as against an individual,' it is, nevertheless, well established in the law that the doctrine of estoppel in pais is fully applicable against a municipality if it is necessary to invoke it to prevent manifest injustice. *Piz v. Housing Authority,* 132 Colo. 457, 289 P. (2d) 905. In *Piz v. Housing Authority,* supra, numerous decisions of this court are cited which fully sustain resort to the doctrine of estoppel against governmental agencies to prevent injustice. This is such a case."

The *Piz* case also applied equitable estoppel to the Denver Housing Authority to prevent its abandoning a condemnation suit after the condemnee had changed his position in reliance upon the original conduct of the Authority. In discussing equitable estoppel, the Court said:

"In *Johnson v. Neel,* 123 Colo. 377, 299 P. (2) 939, we held that the doctrine of estoppel in pais will always be applied to prevent fundamental injustice. There, Mr. Justice Moore speaking for the court, stated: 'We are of the opinion that under the peculiar facts of this case the doctrine of estoppel in pais is applicable and controlling. This doctrine is founded upon principles of fair dealing and is designed to aid the law in the administration of

justice where, without its aid, injustice might result. In 19 American Jurisprudence, page 640, we find the following statement: "Generally speaking, however, equitable estoppel is a rule of justice which in its proper field prevails over all other rules." The doctrine of equitable estoppel has been invoked to cut off rights or privileges conferred by statute, and constitutional rights may be effectively waived by conduct consisting of action or failure to act. *Munsell v. People,* 122 Colo. 420, 222 P. (2d) 615; *Kalloch v. Elward,* 118 Me. 346, 108 Atl. 256, 8 A.L.R. 750; *Wilson v. Philadelphia School District,* 328 Pa. St. 225, 195 Atl. 90, 113 A.L.R. 1401. "A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." *Kalloch v. Elward,* supra.' "

See also *Seavy, Studies in Agency* 184, wherein the author, speaking of estoppel as an aspect of apparent authority, said:

" * * * The other theory of apparent authority is that the principal by his conduct has misrepresented the existence of authority to the third person and is thereafter estopped to deny the existence of authority if, but only if, the third person has changed his position. Estoppel is fundamentally a tort theory, based upon a misrepresentation of facts by one person to another which creates a situation in which it is desirable to prevent harm to the other by requiring the first to make good his words. It would follow, therefore, that if apparent authority is based upon this theory there is no contract between the principal and the person with whom the agent deals unless the agent is authorized, and the principal is bound if, but only if, the other has changed his position."

The *Restatement of Agency,* Sec. 8, also recognizes the present principle and sets forth its limitations (p. 33):

" * * * Like apparent authority, it is based on the idea that one should be bound by what he manifests irrespective of fault; but it operates only to compensate for loss to those relying upon the words and not to create rights

in the speaker. It follows, therefore, that one basing his claim upon the rules of estoppel must show not merely reliance, which is required when the claim is based upon apparent authority, but also such a change of position that it would be unjust for the speaker to deny the truth of his words. Estoppel is dealt with as a form of deceit, in which the remedy is to hold the speaker to the truth of his statements instead of creating a tort action for misrepresentation. The one estopped is given no rights thereby."

Deceit was not of course present in the instant case, but the conduct of Aurora in allowing its manager and engineer to exercise authority with respect to the carrying out of the project in question was such as to lead the defendants as reasonable men to believe that the officials were acting within the scope of the powers granted to them. Unquestionably the defendants in fact relied, to their detriment, on the appearance thus created. It would be most unjust to allow Aurora to now renege. In view of this, it seems clear that the principles here discussed come into play to relieve the defendants.

We find it unnecessary to discuss other points urged by defendants, including acceptance and ratification. Cf *Hayutin v. Gibbons*, 139 Colo. 262, 338 P. (2d) 1032, and *Gordon v. Pettingill*, 105 Colo. 214, 96 P. (2d) 416. It is sufficient to say that in the light of the above principles as applied to the undisputed evidence in the case, Aurora failed to establish its case and particularly it failed to establish that the deefndants had wantonly and recklessly and with disregard to the rights of the city failed to construct a culvert of the existing size.

The judgment of the district court is reversed and the cause remanded with directions to dismiss Aurora's cross claim.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.