No. 24424.

DANA CRAWFORD, ROBERT L. STEARNS, JEAN K. BAIN, WILLIAM B. CHENOWETH AND MILDRED TAYLOR *v.* RONALD C. MCLAUGHLIN, AUBREY BRELSFORD, PAUL CELLA, ARTHUR COWPERTHWAITE AND MARJORIE HORNBEIN, AS INDIVIDUALS AND COLLECTIVELY, AS CONSTITUTING THE BOARD OF APPEALS AS ESTABLISHED BY THE BUILDING CODE OF THE CITY AND COUNTY OF DENVER, GERALD H. PHIPPS, INC., A COLORADO CORPORATION AND B. F. SWAN.

(473 P.2d 725)

Decided August 10, 1970.

HOLME, ROBERTS and OWEN, A. EDGAR BENTON, DONALD K. BAIN, for plaintiffs in error.

GEORGE LOUIS CREAMER, ANTHONY F. ZARLENGO, HOWARD M. KIRSHBAUM, for defendants in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

## I. *THE CONTROVERSY.*

THIS lawsuit arises out of a controversy between defendants in error, B. F. Swan, owner of real property which abuts Cheesman Park on its west boundary, and Gerald H. Phipps, a general contractor who was retained by Swan to build an apartment house on the property, on the one hand, and the City and County of Denver and the Director of the Building Department on the other. Phipps, on behalf of Swan, on or about July 19, 1968, applied to the Building Department for a permit to construct a four-

teen story, twenty-eight unit luxury apartment building on the property. A permit was granted July 19, 1968, but because it was after three o'clock p.m., Friday (that being the cutoff time for record purposes), the permit was dated Monday, July 22, 1968. Swan and Phipps will be referred to as "Swan" unless the context indicates otherwise.

On August 9, 1968, the Director of the Building Department by letter to Phipps informed him that the City Attorney, at the request of the Director of Planning, had rendered an opinion to the effect that a recently passed (August 6, 1968) city ordinance (No. 260, Series of 1968) limiting the height of structures on the west side of Cheesman Park, in order to preserve the mountain view from the park, was applicable to the Swan property. The Director advised Phipps that all subsequent permits required for the construction of the apartment building would be issued subject to the height limitation of the mountain view ordinance. The effect of this limitation would be to reduce the proposed structure from fourteen to seven stories.

Swan and Phipps appealed the Director's order to the Board of Appeals of the Building Code. The Board of Appeals, after a hearing, held that the permit issued by the Building Department to Phipps was for construction of a fourteen story, twenty-eight unit apartment building and was not limited to the construction of "the foundation only."

The City and the Director, by certiorari [R.C.P. Colo. 106(a)(4)], obtained a District Court review of the order of the Board of Appeals. The District Court affirmed the decision of the Board of Appeals. The City and the Director timely filed a motion for new trial which the court denied. The City and the Director then elected to abide by the order of the District Court.

## II. *THE INTERVENTION.*

It was at this juncture in the proceedings that the plaintiffs in error, Dana Crawford, Robert L. Stearns,

Jean K. Bain, William B. Chenoweth and Mildred Taylor (collectively hereinafter referred to as "Crawford"), over objection of Swan, were granted leave by the trial court to intervene [R.C.P. Colo. 24(a)(2)].

The Crawford group are residents and taxpayers of Denver, living in the vicinity of Cheesman Park, and are interested in preserving the mountain view from the park for themselves and all other residents of Denver.

The order granting the petition to intervene gives rise to the first issue presented for our consideration.

Swan consistently, by appropriate motions, challenged the correctness of the trial court's ruling which permitted Crawford to intervene for the sole purpose of appealing the trial court's judgment affirming the Board of Appeals. The appeal was perfected within the time limitation of the writ of error procedure then in effect; consequently, the intervention did not result in any delay in the determination of those issues properly raised in the motion for new trial filed by the City.

Under other circumstances we would be compelled to meet the intervention issue head-on, but because of the fact that we affirm the trial court on the merits of the controversy we have elected not to decide the issue in this instance. We therefore proceed to consideration of the substantive issue.

### III. SCOPE OF REVIEW.

■ Crawford picked up the challenge where the City dropped it. By virtue of the intervention the intervenors stand in the stead of the City. Consequently, our review will be just as broad and just as limited as though the City had pursued the appeal rather than Crawford. In short, Crawford benefits or suffers in the same manner and to the same degree as she would have had the City carried this litigation to its ultimate conclusion. As stated in *Moreno v. Commercial Security Bank*, 125 Colo. 11, 240 P.2d 118, "It is the duty of courts to respect the integrity of the issues raised by the pleadings between the

original parties and to prevent the injection of new issues by intervention."

As indicated above, the genesis of this lawsuit was the Director's letter of August 9, 1968, advising Phipps that the previously issued permit had been interpreted by the City Attorney as one to construct "the foundation only," and that the apartment building contemplated by the permit would be subject to the height limitations of the subsequently adopted mountain view ordinance. In effect, the Director said that because of the *limited* permit issued to Phipps the mountain view ordinance would now be applicable to all supplementary permits required by Swan. It was the *nature of the permit* which controlled the opinion — the effect of the mountain view ordinance on future permits was merely an incident which flowed from the permit.

Phipps and Swan invoked the provisions of Section 201 of the Building Code which provides for an appeal to the Board of Appeals of the Building Code by anyone aggrieved by a decision of the Director. [Sec. 201 (h) (2)]. The Board reversed the Director's determination.

The City and the Director then applied to the District Court for a review of the Board's decision. (R.C.P. Colo. 106).

The scope of judicial review is governed by Rule 106. It provides that,

"(a) * * * relief may be obtained * * *:

* * * *

"(4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy. * * * Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

In determining the scope of review in this court an analysis of the issues formulated by the record made

before the Board of Appeals is essential. It is the same record considered by the trial court.

The Board of Appeals held a hearing to review the Swan and Phipps appeal. The Board ruled that the permit was not for construction of "the foundation only," but a general permit for the construction of a fourteen story, twenty-eight unit apartment building. The Board's order stated,

"That * * * all necessary building permits be issued provided that plans and specifications submitted by the appellant to the Denver Building Department meet the requirements of the Building Code * * * as it was constituted on July 22, 1968."

In their complaint for review under Rule 106 the City and the Director alleged that the Board of Appeals exceeded its jurisdiction in that,

"(a) All matters and things herein concerned arose under and were governed and controlled solely by the provisions of Chapter 640. (Building Restrictions To Preserve And Protect Health, Safety and General Welfare) of the Revised Municipal Code of the City and County of Denver, as amended;

"(b) Pursuant to said Chapter 640. of the Revised Municipal Code, as amended, a whole, complete and exclusive administrative procedure is established including the creation and empowering of a certain administrative board, i.e., The Board of Plan Enforcement, Review and Variation;

"(c) The functions, duties and powers of Defendant Board of Appeals of the Building Code, including without limitation the various individuals collectively constituting such board, are limited to appeals under the Building Code of the City and County of Denver and to matters governed by and within the provisions of such Building Code and do not extend to or include any functions, duties or powers under Chapter 640. of the Revised Municipal Code, as amended, as herein set forth."

It was, in brief, the position of the City and the Di-

rector in the District Court that the enforcement of the mountain view ordinance (No. 260, Series of 1968) was the central issue before the Board of Appeals and that it lacked *jurisdiction* to entertain the question raised by the Director's letter of August 9, 1968.

Basically, this raised the question as to whether the order appealed from should have been reviewed by the Board of Plan Enforcement, Review and Variation, rather than the Board of Appeals of the Building Code. This was just another way of saying that the Board of Appeals had *no jurisdiction.*

The trial court affirmed the Board of Appeals, holding that the Board had not exceeded its *jurisdiction,* nor had it *abused its discretion.*

An examination of the record before the Board of Appeals discloses that there is sufficient competent evidence to support the ruling of the Board of Appeals that the permit issued by the Building Department was for the construction of a fourteen story, twenty-eight unit structure and not one for "the foundation only."

The Board of Plan Enforcement Review and Variation, created by Chapter 640. (Building Restrictions to Preserve and Protect Health, Safety and General Welfare — the mountain view ordinance) is given the power "to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of Chapter 640."

The mountain view ordinance delegated its enforcement to "the Director of the Building Department or his authorized representative."

The Board of Appeals of the Building Code [Section 201(h)(2)] is given the power to reverse, or affirm wholly or in part, or modify any order or determination of the Director where it is alleged by an aggrieved party that there is error in any order, requirement, decision or determination made by the Director in carrying out the strict letter of the Building Code.

It thus appears that a possible conflict exists as to which board should have heard and determined the appeal from the Director's order. Did the issue raised by the Director's letter of August 9, 1968, arise out of a determination relating to his functions in administering the Building Code or the mountain view ordinance? It is not clear cut. It is interesting to note, however, that the City Attorney appeared and participated before the Board of Appeals of the Building Code *without raising the jurisdictional question.* Also, it was made clear by the City Attorney in discussing the issues at the Board hearing that,

"* * * the only issue before the Board then at this time is to determine whether in fact the permit as issued was a permit for the full 14-story building, or was it a permit for simply a foundation. * * *"

No one questions the jurisdiction of the Building Department to issue building permits. The passage of the amendment to the mountain view ordinance extending its coverage to Cheesman Park was not the basic premise on which the City Attorney based his opinion that the permit was limited to "foundation only" and, therefore, the mountain view ordinance was applicable to the Swan property. Some excerpts from the Director's letter to Phipps are pertinent and will demonstrate the point:

"On July 22, 1968 Construction Permit No. 34866 was issued to your firm for the construction of an apartment on Lots 1 to 7, inclusive, Block 16, Inslee's Addition, City and County of Denver. Stamped on this permit was the following: 'This is a foundation permit only. The general contractor assumes full responsibility for any changes in foundation required due to the approval of the super structure.'

"Subsequent to the issuance of this permit and passage by City Council of the Ordinance Preserving View of the Mountains, the Director of Planning, James D. Braman, Jr. requested a legal opinion of the City At-

torney relative to the issuance of further permits by this office for this particular structure.

"This opinion in part states: 'It appears to us that the permit issued could lawfully be issued after the enactment of the ordinance to preserve mountain views. A permit is to be construed from its own language. By its own terms 'foundation permit only,' the permit seems wholly lawful at this time but is restricted to an authorization to construct a foundation and no more. * * *'"

The testimony before the Board disclosed that it was the practice to issue a general permit upon application, supported by sufficient data as to details to enable the Building Department to determine whether the proposed foundation complied with the code. Subsequent permits are issued as the construction progresses upon the furnishing of supplemental plans and specifications.

The permit, designated "Construction Permit No. I," among other things, showed that the first floor area was to be 4980 square feet; the height of the building was to be 168 feet; number of stories 14; total units 28; that it had been approved by the Zoning Administrator, the City Engineer and the Traffic Engineer.

The permit further disclosed, "Valuation of Work $1,300,000," and the payment of the total fee ($3150.00) for the proposed building. The permittee's attention was directed by "NOTE ⫸→" to the following:

"Separate permits must be obtained for swimming pools, signs, fences, retaining walls, demolition, incinerators, electrical, plumbing and heating."

The Director rather cogently disclosed his opinion as to what the permit represented by the opening sentence of his letter — "On July 22, 1968 Construction Permit No. 34866 was issued to your firm for the construction of an apartment * * *."

The trial court, after reviewing the foregoing evidence, in dictating its findings of fact and conclusions of law, stated:

"It is the opinion of this Court the issuance of such a

permit with the matters written upon the face of it were the excavation permit and the notice of permit to be posted upon the property and allied documents were sufficient for the property owner as well as the contractor to rely upon the same.

"If that was not the case, why was it issued? It would have been wholly idiotic to issue such a document through the customary and regular way if it wasn't intended to be an authority by the municipality for the property owner to build the contemplated improvements upon the property owned by him."

■ We therefore conclude that the Board of Appeals of the Building Code had before it, and rightly so, a matter which arose out of the proper application of the Building Code and not out of the mountain view ordinance. Thus holding, it follows that the Board of Appeals did not exceed its jurisdiction.

The trial court, applying the doctrine of *equitable* estoppel, found that the Board of Appeals had not abused its discretion.

■■ This court has recognized and applied the doctrine of equitable estoppel for many years. *Denver v. Stackhouse,* 135 Colo. 289, 310 P.2d 296; *Piz v. Housing Authority,* 132 Colo. 457, 289 P.2d 905. This doctrine is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result. *Piz v. Housing Authority, supra.* It is applicable against governmental agencies to prevent injustice. *Denver v. Stackhouse, supra.*

■ The doctrine of equitable estoppel bars a municipal corporation from enforcing an obligation by taking a position contrary to a previous representation relied on by defendants to their detriment. *Franks v. Aurora,* 147 Colo. 25, 362 P.2d 561.

We recognized the principle recently in *Cline v. City of Boulder,* 168 Colo. 112, 450 P.2d 335. In Cline, Mr. Justice Day observed:

"The basic legal question involved is simply, does a building permit per se vest such a property right in the owner that subsequent rezoning is ineffective as to the property? The majority rule in the United States is that the owner must take some steps in reliance on the permit before his rights vest thereunder. * * *

\* \* \* \*

"Although not squarely in point, it appears that this court has at least followed the rationale of the majority rule in Denver v. Stackhouse, 135 Colo. 289, 310 P.2d 296. In that case there was substantial reliance on a building permit which had been erroneously issued for the construction of a building which was prohibited by an existing zoning ordinance. The court noted that the landowner had expended substantial funds, in the amount of $18,000, and held that Denver was estopped to contest the validity of the permit. Reliance is generally necessary to invoke the doctrine of estoppel, so we assume that although the court did not say so in so many words, the landowner's reliance was critical to the decision."

"We infer from the evidence that the Clines obtained a permit merely as a tactic. * * *"

As noted, equitable estoppel or estoppel *in pais* is an equitable doctrine which is invoked to prevent injustice. Some of Swan's acts, which were of a significant nature, occurred preliminarily to the issuance of the permit. For example, the purchase of the lots for $220,000. Evidence of an expert showed them to be worth just half that amount if the height limitations of the mountain view ordinance were invoked. Swan had provided in the purchase contract that the contract would not be binding upon him if the zoning were changed. Also, he employed an architectural firm and had obligated himself for fees to the extent of $50,000 for the design of a fourteen-story building. These facts should not be totally ignored in considering the acts which accompanied and followed in reliance on the issuance of the permit. The existing

structure was razed, the foundation was constructed for the specific building for which the permit was issued, further financial commitments were made to the architects and the contractor after the permit was issued. The totality of the situation should be weighed in the equitable balance.

As noted by the trial judge, "it would be an odd course of conduct which was adopted by Mr. Swan if he didn't rely on the permit."

The trial court further observed that,

"* * * they obtained the permit and it was not a tactic. The building of the apartment house was not a dream but a reality, * * *."

▮▮▮▮ It appears that the Director lawfully issued the permit in conformance with the practice and ordinances in effect at the time of the application; that the Director's letter attempting to limit the height of the contemplated structure was based upon a strained and unrealistic interpretation of the nature of the permit; that the permittee justifiably changed his position in reliance on the permit to his detriment; and that in ordering the Director to recognize Construction Permit No. I as a general building permit the Board of Appeals was acting within its delegated jurisdiction and in so doing it did not abuse its discretion.

The judgment is affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE LEE not participating.