524 P.2d 1390 (1974)
The CITY OF SHERIDAN, a municipal corporation, Plaintiff-Appellant,
v.
J. P. KEEN et al., Defendants-Appellees.
No. 73-261.
Colorado Court of Appeals, Div. II.
July 16, 1974.
*1391 Hemminger, McKendree, Vamos & Elliott, P. C., Gary H. Hemminger, Richard D. Greengard, Denver, for plaintiff-appellant.
Cooke, Gilles, Johnson & Schaefer, Joffre M. Johnson, Denver, for defendants-appellees.
Selected for Official Publication.
ENOCH, Judge.
The City of Sheridan, plaintiff, appeals from a judgment in favor of defendants J. P. Keen, Arthur B. Ballah, and Viking Logging & Construction Co. in a suit seeking declaratory and injunctive relief for alleged violations of the City's zoning ordinances. We reverse.
The City's complaint alleged that defendants maintain a mobile home as a residence on property zoned "industrial," in violation of the following ordinances:
"Section VIII. `E' Industrial District Regulations
Uses: Buildings and land may be used for any use, except residential uses, not in conflict with any ordinance of the City of Sheridan regulating nuisances. . . ." Sheridan Code of Ordinances, App. A. § VIII (emphasis added).
"Use As Residence Outside Court Prohibited. No trailer coach shall be maintained upon any private or public property in the City when the same is used for living purpose unless the property is licensed as a trailer court." Sheridan Code of Ordinances § 24-6.
Undisputed evidence in the record established the following facts. Viking Logging & Construction Co., doing business as Statewide Trucking, originally operated a general trucking business at a location outside the City of Sheridan. In October 1971 the company was notified that its lease would not be renewed. Between December 1971 and March 1972 the company relocated on a nearby site, within the Sheridan city limits. Defendant Ballah, president of the company, testified that although he realized the new location was in Sheridan, he did not investigate the zoning ordinances applicable to the property. However, Ballah did have several conversations with the Sheridan have several conversations with the Sheridan Building Inspector regarding the company's building plans, plotting of ground, and fencing.
The subject of the dispute is a mobile home which is used as a residence by defendant Keen, Statewide's night watchman, and his family. Since approximately 1965, Statewide has employed a resident watchman, who also serves as an emergency truck driver and night dispatcher. Mr. Keen's mobile home was relocated at the new site of the business in Sheridan. Much of the record consists of testimony regarding the necessity of having a night watchman on the premises. The watchman is often required to leave on emergency calls during late hours of the night, and at those times his wife acts as watchman and dispatcher. There is some evidence in the record, although it is disputed, to support the trial court's finding that the City Building Inspector knew that the company planned to use the trailer as a residence prior to the time the trailer was moved to the new location. The trailer was actually moved onto the property on March 12, 1972.
Ballah was first notified that the trailer might conflict with zoning ordinances in a conversation with the Building Inspector on March 13. On March 16, he received a letter from the Building Inspector confirming *1392 that use of the mobile home as a residence violated the Sheridan Code of Ordinances. The letter advised defendant to appear before the Board of Adjustments on April 11 to seek a variance. Ballah attended this meeting and was told by the chairman that if there were any problems concerning the use of the trailer on the property, the company would be notified within three days. Ballah ceased making improvements on the property, but when he had received no word from the Board of Adjustments after four or five days, he resumed construction activities, which consisted of hauling in fill rock, dirt and topsoil for the planting of grass. The trailer had been moved in and hooked up to utilities a month earlier. Defendant did not at any time apply for a variance or pay the required fee. We note that the president and owner of the trucking company had built approximately 500 homes in the Denver University area prior to going into the trucking business and thus is quite familiar with zoning ordinances in general. On June 6, the company was served with a criminal summons alleging violation of the zoning ordinance. The complaint in this action was filed by the City in October 1972, and the court stayed proceedings on the criminal complaint pending disposition of this case.
The trial court, sitting without a jury, held that the residential characteristics of the use of the trailer on the property were so incidental to a valid industrial use as not to be in violation of the Sheridan Code. In addition, the court held that the City was estopped to complain about the use of the trailer because of the actions of the City's agents. We agree with the City's contentions that the trial court erred in both of these rulings.
An accessory or incidental use has been defined as a use customarily incident to the principal use, and so necessary or commonly to be expected in conjunction therewith that it cannot be supposed the ordinance was intended to prevent it. Zahn v. Board of Ajustment, 45 N.J.Super. 516, 133 A.2d 358; see Board of County Commissioners v. Thompson, 177 Colo. 277, 493 P.2d 1358. In other words, an accessory use is one which is deemed to be permitted by implication where the ordinance is silent on the particular use in issue. The concept of accessory use relieves a municipality from attempting to enumerate in the statute every possible approved use, and allows courts to determine on a case by case basis whether permission for the proposed use has been impliedly granted. See E. Bassett, Zoning 100; 1 A. Rathkopf, The Law of Zoning and Planning ch. 23 (3d ed.).
However, by definition, a use which is expressly prohibited in the zoning ordinance cannot be an accessory or incidental use. Although, as in this case, the use may be "incidental" within the nontechnical meaning of that word, it cannot be an incidental use in legal terms if the governing body has expressly prohibited it. Rathkopf, supra, at 23-4.
Both of the ordinances relied upon by the City explicitly disallow use of the trailer as a residence on defendants' property. It is undisputed that Mr. Keen and his family live in the mobile home. This constitutes "residential use" of the trailer, and it is irrelevant, for the purpose of applying the zoning ordinances, that the trailer serves a necessary function in connection with legitimate industrial uses of the property.
This express prohibition of the disputed use in the ordinance distinguishes the present situation from that in County of Cook v. Hoytt, 59 Ill.App.2d 368, 208 N.E.2d 410, and makes the trial court's reliance on that case misplaced.
As an alternative basis for its decision, the trial court held that the City of Sheridan was estopped by the actions of its agents to assert violations of the zoning ordinances. The City also challenges this ruling, alleging that the necessary elements of estoppel have not been shown in this case. We agree.
*1393 It is well established in Colorado that the doctrine of equitable estoppel may be applied against a municipality. Piz v. Housing Authority, 132 Colo. 457, 289 P.2d 905; Denver v. Stackhouse, 135 Colo. 289, 310 P.2d 296. However, estoppel will not be invoked as freely against a municipal corporation as against an individual. Piz, supra; Stackhouse, supra. To be entitled to relief, the party alleging estoppel must show that, to his detriment, he changed his position in justifiable reliance on the words or conduct of the other party. Crawford v. McLaughlin, 172 Colo. 366, 473 P.2d 725; Carey v. Carey, 29 Colo.App. 328, 486 P.2d 38. When each of these elements is shown, the court may apply the principle of equitable estoppel to prevent fundamental injustice. Piz, supra; Johnson v. Neel, 123 Colo. 377, 229 P.2d 939. In this case, defendants failed to prove detrimental reliance on affirmative representations of the City.
There is no evidence in the record indicating that defendants changed their position in reliance on the alleged representation of either the Building Inspector or the Board of Adjustments. Ballah testified that he first spoke to the Building Inspector after the leases for the new site had been negotiated and the company was committed to its move into Sheridan. He made no attempt to ascertain zoning restrictions on the property prior to negotiation of the new leases. Defendants made no showing that the decision to move to that particular location was triggered by representations that residential use of the mobile home would be permitted. Ballah acted at his peril in assuming that the zoning regulations were the same as those governing the old location.
It should be noted that defendant did not prove and the trial court did not find any affirmative representations by the Building Inspector regarding the appropriateness of the residential use of the trailer. At best, the evidence shows that the Building Inspector did not raise any objection to plans for moving the trailer to the Sheridan location. Defendant Ballah did not testify that he ever asked the Inspector specifically if residential use of the trailer was permitted. He merely testified that the Inspector discussed plans for plotting and fencing and inspected utility and sewage connections. The Inspector's conduct does not indicate that defendants were "unmistakably misled" by his failure to protest. Flinn v. Treadwell, 120 Colo. 117, 207 P.2d 967. The evidence in this case falls far short of establishing the type of intimate involvement of the City which was shown in Franks v. Aurora, 147 Colo. 25, 362 P.2d 561 and Denver v. Stackhouse, supra. In each of those cases, the city through its agents had formally approved specific plans submitted through proper channels. In this case, the Building Inspector merely failed to raise an objection to plans which were discussed with him on the site.
The strongest evidence of an affirmative representation by the City is the testimony of several witnesses that the Board of Adjustments promised to notify defendant within three days after their meeting if a variance would be required. When they failed to contact him within that time, he may have been misled into an assumption that all of the uses of the property were permissible. However, defendants were under a duty to comply with the ordinance, and if a variance were required, and they were so advised, it was defendants' responsibility to make proper application and pursue the issue. Furthermore, the meeting of the Board was held in April, long after the Sheridan site had been selected and one month after the trailer had been moved onto the lot. Since the relocation was completed prior to the Board meeting, it cannot be said that defendants relied on the action of the Board to their detriment. The only unfinished work at that time was leveling of the site and landscaping. The mobile home had already been installed and the new trucking facilities were operational.
The principles of justice do not require the application of the doctrine of equitable estoppel in this case. Although the record *1394 contains much evidence indicating that cessation of the use of the trailer as a residence may create an economic hardship on defendants, this difficulty was created not by affirmative representations of the City, but by defendants' own failure to discover zoning limitations on the property and by their failure to pursue any effort to obtain a variance.
The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for the plaintiff.
SILVERSTEIN, C.J., and RULAND, J., concur.