Sandra BEST, Floyd R. Lephart, and Alex C. Tejada, Plaintiffs-Appellants,

v.

LA PLATA PLANNING COMMISSION, the Board of County Commissioners, La Plata County, State of Colorado, and Sara Duncan, R.T. Scott, and Don Michael in their capacity as County Commissioners, Defendants-Appellees,

and

Rancho Durango, Ltd., Intervening Defendant-Appellee.

No. 83CA1331.

Colorado Court of Appeals, Div. III.

Nov. 23, 1984.

Rehearing Denied Dec. 20, 1984.

Certiorari Denied May 20, 1985.

Timothy A. LaFrance, Durango, for plaintiffs-appellants.

David L. Dickinson, La Plata Co. Atty., Paula Marie Jakubanis, Asst. Co. Atty., Durango, for defendants-appellees.

Frank J. Anesi, Durango, for intervening defendant-appellee. ·

Kelly, Potter & Barshov, P.C., Eric Damian Kelly, Pueblo, for amicus curiae, American Planning Ass'n, Colorado Chapter.

BABCOCK, Judge.

In this action concerning a proposed land development project, plaintiffs appeal the trial court's denial of their request for declaratory and injunctive relief and its refusal to overturn defendants' approval of the Edgemont Ranch Planned Unit Development sketch plan submitted by Rancho Durango, Ltd. (the developer). We affirm.

Plaintiffs are landowners who live near a proposed planned unit development project known as the Edgemont Ranch. They alleged in their third and fifth claims for relief that the approval of the Edgemont Ranch PUD sketch plan by the La Plata County Planning Commission (the Commission) and the La Plata County Board of County Commissioners (the Board) was arbitrary and capricious, constituted an abuse of discretion, and was contrary to law. Plaintiffs also alleged that La Plata County's Planned Unit Development Regulations (the Regulations) are not in conformity with the state enabling act, are contrary to the due process provisions of both the federal and state Constitutions and are, therefore, null and void.

This action was· filed within 30 days of the Board's approval of the sketch plan. Jurisdiction was invoked pursuant to the administrative review provisions of § 24–4–106, C.R.S. (APA) and C.R.C.P. 57 governing declaratory judgment actions. The trial court denied defendant's motion to dismiss for lack of jurisdiction, permitted plaintiffs to amend their complaint to seek review under C.R.C.P. 106(a)(4), and to add an eighth claim concerning conflict of interest of a voting commissioner and a ninth claim concerning nonconformity with the Planned Unit Development Act of 1972. The motions to amend were filed outside the 30-day time limit of C.R.C.P. 106(b).

I.

▮ Defendants contend that the trial court lacked jurisdiction to rule upon the merits of plaintiff's complaint. Before considering the merits of this contention, however, we must address plaintiffs' assertion that because defendants did not perfect a cross-appeal they cannot raise this C.R.C.P. 106(a)(4) jurisdictional issue on appeal.

"[T]he question of jurisdiction may be raised at any stage of an action, ... without an assignment of error on the subject." *Peaker v. Southeastern Colorado Water Conservancy District*, 174 Colo. 210, 483 P.2d 232 (1971). Here, the jurisdictional issue was raised, briefed, and argued before the trial court and on appeal. Therefore, we conclude that defendants' failure to file a cross-appeal does not preclude us from considering this issue from being considered by us. *See also City of Delta v.*

*Thompson,* 37 Colo.App. 205, 548 P.2d 1292 (1975).

Turning to the merits of defendants' challenge to the trial court's jurisdiction, we note the following pertinent principles.

■ A zoning authority acts in a quasi-judicial capacity when: 1) It acts pursuant to a state or local law requiring adequate notice be given to the community; 2) a state or local law requires that the body conduct a public hearing pursuant to notice at which time concerned citizens must be given an opportunity to be heard and to present evidence; and 3) a state or local law requires the body to make a determination by applying the facts of a specific case to certain criteria established by law. *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975). Thus, the determination whether a zoning authority properly applied state or local law to a specific property involves consideration of whether the zoning authority abused its discretion or exceeded the bounds of its jurisdiction. *Snyder v. City of Lakewood, supra.* It is axiomatic that the exclusive means of resolving this issue is a certiorari proceeding under C.R.C.P. 106(a)(4). *Westlund v. Carter,* 193 Colo. 129, 565 P.2d 920 (1977). Failure to bring a C.R.C.P. 106(a)(4) proceeding within 30 days of the final action of the zoning authority is a jurisdictional defect under C.R.C.P. 106(b). *Snyder v. City of Lakewood, supra; Westlund v. Carter, supra.*

■ Here the Board was acting in accordance with the Regulations adopted pursuant to § 24–67–101, et seq., C.R.S. (1982 Repl.Vol. 10). The Regulations require notice, hearing, and opportunity to appear and present evidence. In determining its recommendation as to the plan, the Commission is required by the Regulations to apply the facts relevant to the applicant's case to criteria set forth in the Regulations. We conclude that the zoning authority here was acting in a quasi-judicial capacity in making its zoning determination as to the Edgemont Ranch PUD sketch plan, and, therefore, the provisions of C.R.C.P. 106 must govern review.

■ Thus, it would appear that plaintiffs' complaint which refers to the APA as its jurisdictional source is defective. However, a review of the allegations contained in the complaint indicates that the sole amendment required to bring plaintiffs' cause of action within C.R.C.P. 106 was to delete the mistaken reference to the APA as the basis for the trial court's jurisdiction and substitute a reference to C.R.C.P. 106(a). In all other respects the timely filed complaint stated causes of action under C.R.C.P. 106(a)(4) and C.R.C.P. 57. And, the eighth and ninth claims for relief bear directly upon the Board's exercise of discretion, *see* C.R.C.P. 106(a)(4), and whether the Regulations conformed to the state enabling act. *See* C.R.C.P. 57. Under these circumstances we conclude that the amendments were proper, *see* C.R.C.P. 15(a), and relate back to the date the complaint was filed. *See* C.R.C.P. 15(c); *People v. District Court,* 200 Colo. 65, 612 P.2d 87 (1980). Thus, the trial court had jurisdiction to address the merits of plaintiffs' complaint.

## II.

Planned unit development regulations, originally adopted February 28, 1978, were recommended for revision and reenactment by the Commission on July 16, 1981. In accordance with § 30–28–133(1), C.R.S., the Board held a public hearing on August 31, 1981, concerning the Regulations. The required 30-day notice of the time and place of the hearing was published in a newspaper of general circulation in the county. The Board found that the PUD regulations, as proposed for revision and reenactment, would be effective and reasonable and in accord with the Planned Unit Development Act of 1972. On November 2, 1981, the Board adopted the Regulations by resolution.

■ The Board is empowered to adopt regulations for planned unit developments pursuant to §§ 24–67–101, et seq., C.R.S. (1982 Repl.Vol. 10). The Regulations as revised and reenacted on November 2,

1981, are a legislative enactment which is presumed valid; the party assailing the validity thereof has the burden of proving its invalidity beyond a reasonable doubt. *Tri-State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (1982). And, the Regulations should be reviewed in light of the Planned Unit Development Act of 1972 which provides that: "This article shall be liberally construed in furtherance of the purposes of this article and to the end that counties and municipalities shall be encouraged to utilize planned unit developments." Section 24–67–107(6), C.R.S. (1982 Repl.Vol. 10).

Traditional zoning establishes fixed uses and requirements applicable to specified areas while the PUD concept permits a flexible approach to development of individual tracts in response to changing needs and in a manner consistent with a governmental entity's PUD regulations. *See Tri-State Generation v. City of Thornton, supra.* Its hallmark is the integration of diverse uses and density patterns within the tract commensurate with the needs and welfare of the public. *See* § 24–67–102, C.R.S. (1982 Repl.Vol. 10).

The rigidity inherent in traditional zoning has led to its supplementation with the more flexible PUD zoning device. However, in order to avoid arbitrary abuse of the zoning authority's enhanced discretion, the local PUD enactment must contain sufficient standards against which the zoning authority's action may be measured. *Tri-State Generation v. City of Thornton, supra.*

We conclude that plaintiffs here failed to prove the invalidity of the Regulations beyond a reasonable doubt.

### A.

■ Plaintiffs first contend that the Regulations violate the mandatory requirements of the enabling legislation. Specifically, they argue that the Regulations fail to specify density standards, minimum size and acreage standards, and permitted uses, fail to require geological and soil reports and guarantees of water supply and sew-

age disposal plans at the sketch plan stage, and fail to grant authority to the Board to review PUDs. Defendants reply that the Regulations are in "substantial compliance" with enabling legislation and case law. We agree with defendants.

The Regulations define calculation of density, list integrated uses in the statement of purpose, and require narrative specifications which deal with density, allowable uses, and intensity of land use. They specify the minimum number of units or acres which may constitute a PUD by incorporating by reference the La Plata County Subdivision Performance Standards.

Furthermore, the Regulations are keyed to availability of services generally, with particular emphasis on water and sewer services. And, while not required at the sketch plan stage, geologic and soil reports are required at the preliminary plan stage.

Finally, all preliminary PUD plans must meet extensive submission requirements which satisfy all conditions of approval at the sketch plan stage. The Regulations establish a thorough review process at both the sketch plan stage and preliminary plan level.

We conclude that the Regulations provide adequate constraints on the county and establish standards facilitating meaningful judicial review of the county's action. Plaintiffs advocate PUD regulations which would result in rigid zoning. This approach was expressly rejected in *Tri-State Generation & Transmission v. City of Thornton, supra.*

### B.

■ The plaintiffs further contend that the Regulations cannot legally stand alone when there is no underlying zoning resolution in existence in La Plata County. We disagree.

Zoning is not a condition precedent to adoption of PUD regulations. *See Theobald v. Board of County Commissioners,* 644 P.2d 942 (Colo.1982). We find nothing

in the Planned Unit Development Act of 1972 which leads us to conclude otherwise.

### C.

Plaintiffs also assert that La Plata County's failure to comply with state law requiring that the County Master Plan be adopted by resolution, § 30–28–108, C.R.S., renders the Regulations, null and void. Again, we disagree.

The Master Plan is advisory in nature only and does not have the force of regulation. *See Theobald v. Board of County Commissioners, supra.* Therefore, we hold that any defect in the adoption of the Master Plan does not render the Regulations null and void.

### D.

The plaintiffs next argue that approval of the sketch plan for the Edgemont Ranch by county officials was arbitrary, capricious, and an abuse of discretion. Once again we disagree.

There is competent evidence in the record to support the decision of the Commission and the Board to approve the PUD sketch plan. Consequently, those decisions are binding on review. *Corper v. City & County of Denver,* 191 Colo. 252, 552 P.2d 13 (1976). We find no abuse of discretion. *See Tri-State Generation & Transmission v. City of Thornton, supra.*

### III.

Plaintiffs also contend that a County Commissioner had an impermissible, undisclosed conflict of interest which denied the plaintiffs due process. We disagree.

Before running for office, the commissioner was a partner in a law firm which, after her resignation, represented the developer in the preparation of a water augmentation plan for the development. While a commissioner, she was retained as an independent contractor to work on two legal matters totally unconnected with the Edgemont Ranch PUD project. There is no showing that she was a partner in the

firm at any time the firm represented the developer on its water project prior to her November vote. We conclude that the trial court was correct in its determination that plaintiffs failed to overcome the presumption of integrity, honesty, and impartiality in favor of those serving in quasi-judicial capacities. *Scott v. Englewood,* 672 P.2d 225 (Colo.App.1983).

Judgment affirmed.

BERMAN and METZGER, JJ., concur.