QUAKER COURT LIMITED LIABILITY COMPANY, a Colorado limited liability company, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, State of Colorado; Board of Adjustment of Jefferson County, Colorado; and Timothy Carl, the former and current Zoning Administrator of Jefferson County, Colorado, Defendants–Appellees.

No. 03CA1867.

Colorado Court of Appeals, Division A.

Nov. 4, 2004.

Certiorari Denied March 21, 2005.

Glen B. Maynard, P.C., Glen B. Maynard, Golden, Colorado, for Plaintiff–Appellant.

William A. Tuthill, III, County Attorney, Timothy P. Cox, Assistant County Attorney, Golden, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this action concerning the denial of building permits in a landslide area, plaintiff, Quaker Court Limited Liability Company (developer) appeals from the judgment of the district court upholding, pursuant to C.R.C.P. 106(a)(4), the decision of defendant Board of Adjustment of Jefferson County (BOA), and denying developer's request for a declaratory judgment and inverse condemnation claim against defendant Board of County Commissioners of Jefferson County (BOCC). We affirm.

The facts are undisputed. Developer is the owner of five platted lots described as lots 14 and 15 in Block 2 and lots 4, 5, and 6 in Block 4, Sixth Avenue West Estates, Eleventh Filing, County of Jefferson, Colorado. These lots are located in an area zoned in 1980 as "Planned Development." Since that time the area has been subject to an official development plan entitled Sixth Avenue West Estates. The plan called for a substantial portion of the property to be zoned as a preservation area, within which buildings could not be constructed. The area was zoned as a preservation area because of its geologic instability. The development plan was amended three times between 1980 and 1989.

In 1990, developer's predecessors filed a rezoning application requesting a fourth amendment to the plan to decrease the size of the preservation area. At hearings on the proposed amendment, both the developers and the county expressed concerns about the geologic stability of the preservation area.

The BOCC ultimately approved the new plan, subject to several conditions. Specifically, resolution CC–90–645 provided that "[t]he number of houses permitted in the area that was zoned as Preservation Area prior to this rezoning shall be limited to ten and said area shall be identified on the Official Development Plan graphic." In addition, resolution CC–90–642, which approved a preliminary plat of Sixth Avenue West Estates, provided that "no more than ten (10) houses [can be built] in the area that had been designated [ ] as PA [Preservation Area] prior to the rezoning granted in Resolution No. CC–90–645."

Despite this condition, from 1991 to 1998 at least fourteen houses were constructed completely or partially in lots 3, 4, and 5 in Block 4 of the former preservation area. In 1998, a landslide damaged three of these houses. In 2000, in conjunction with the settlement of a related lawsuit, developer acquired lots 1, 2, 3, 4, 5, 6, and 7 in Block 4 and lots 14, 15, and 17 in Block 2. The houses on lots 3, 4, and 5 were demolished, and developer, also in accordance with the settlement, took measures to stabilize the soil in the landslide area.

In 2001, developer received offers to purchase lots 14 and 15. However, because there were eleven houses at least partially within the former preservation area, and each house proposed on lots 14 and 15 would have been located at least partially within that area, the Jefferson County zoning administrator denied developer building permits for these lots as well as for lots 3, 4, 5, and 6 in Block 4. Challenging the zoning administrator's interpretation of the ten-house limitation, developer appealed the determination to the BOA, which upheld the zoning administrator's decision.

Developer then sought judicial review in the district court, alleging that the BOA had abused its discretion and exceeded its jurisdiction pursuant to C.R.C.P. 106(a)(4). As relevant here, developer's complaint also included a request for declaratory judgment, alleging that the BOCC had exceeded its authority by enacting the ten-house condition, and a claim against the BOCC for inverse condemnation. In response to defendants' motion, the district court dismissed the inverse condemnation claim on ripeness

grounds. Subsequently, in separate rulings, the court affirmed the BOA's decision pursuant to C.R.C.P. 106(a)(4) and granted defendants' motion for summary judgment on the declaratory judgment claim.

On appeal, developer contends the BOA misinterpreted the ten-house condition; the BOCC lacked authority to impose the ten-house condition; and the court erroneously dismissed the inverse condemnation claim.

## I. C.R.C.P. 106(a)(4) Claim

Developer first contends the BOA abused its discretion by misinterpreting the ten-house limitation. Developer asserts that the BOCC, when referring to the number of houses to be counted as part of the ten-house limit, actually meant the number of lots. Noting that only three houses are located entirely within the former preservation area, developer also argues that the intent of the ten-house limit was not to include houses only partially within the area. We disagree.

Pursuant to C.R.C.P. 106(a)(4), "[o]ur review is based solely on the record that was before the board, and the decision must be affirmed unless there is no competent evidence in the record to support it such that is was arbitrary or capricious." *City & County of Denver v. Bd. of Adjustment*, 55 P.3d 252, 254 (Colo.App.2002). Such review is limited to a determination of whether the BOA exceeded its jurisdiction or abused its discretion, "as well as whether an erroneous legal standard was applied by the agency." *Puckett v. City & County of Denver*, 12 P.3d 313, 314 (Colo.App.2000) (quoting *Elec. Power Research Inst., Inc. v. City & County of Denver*, 737 P.2d 822, 826 (Colo.1987)).

In a C.R.C.P. 106 review, an agency's legal conclusions are not reviewed de novo, and will be affirmed if supported by a reasonable basis. *Elec. Power Research Inst., Inc. v. City & County of Denver, supra*, 737 P.2d at 826; *City & County of Denver v. Bd. of Adjustment, supra*, 55 P.3d at 254; *Wilkinson v. Bd. of County Comm'rs*, 872 P.2d 1269, 1278 (Colo.App.1993). Although relied on by developer to argue that the appropriate standard of review here is de novo, neither *Ball Corp. v. Fisher*, 51 P.3d 1053, 1056

(Colo.App.2001), nor *Humana, Inc. v. Board of Adjustment*, 189 Colo. 79, 537 P.2d 741 (1975), was a judicial review proceeding brought pursuant to C.R.C.P. 106. Thus, neither case is applicable.

The BOA's determination is accorded a presumption of validity, and, as a result, the burden is on developer to overcome the presumption. *See Van Sickle v. Boyes*, 797 P.2d 1267 (Colo.1990); *City & County of Denver v. Bd. of Adjustment, supra*, 55 P.3d at 254.

Here, the BOA determined that the language in the resolutions was unambiguous. This determination is supported by the text of the resolutions. For example, CC–90–645 states that *"the number of houses* permitted in the area that was zoned as Preservation Area ... *shall be limited to ten"* (emphasis added). The BOA next found that the resolutions' "purpose [was] to limit construction and disturbance of the soil in an area of geologic instability." The BOA concluded that the purpose of the resolutions was inconsistent with developer's suggestion that the BOCC, in imposing the ten-house limitation, intended to limit the number of lots rather than the number of houses.

We agree with the district court that this determination is reasonable. The term "house" is not synonymous with the term "lot." Moreover, when the BOCC meant "lots" rather than "houses," it so indicated. *See* CC–90–642(6)(b) (conditioning approval on "no more than 35 lots on a cul-de-sac" in one area of the planned development).

Furthermore, the record contains evidence indicating that the BOA was aware that the land in the former preservation area was geologically unstable, that development had been restricted in the area for some time prior to the 1990 amendment, and that recent landslides had destroyed several houses within the area. Thus, it was reasonable for the BOA to conclude that the 1990 resolutions were primarily concerned with the effect that housing construction, not undeveloped lots, would have upon the former preservation area. Restricting the number of lots within the area would not address the primary con-

cern underlying the resolutions, that is, geologic instability.

Developer contends that the BOA erroneously failed to review the transcripts of the 1990 hearings. However, the hearing transcripts show that geologic concerns and, in particular, a limitation on the number of houses constructed within the former preservation area were discussed numerous times throughout the hearings. Thus, even if the BOA did not consider them, the transcripts merely confirm the BOA's conclusion that the geologic instability of the former preservation area was a continuing and significant concern to the BOCC.

We also disagree with developer's argument that even if "houses" does not mean "lots," the ten-house limitation only applies to houses located entirely within the former preservation area. Nothing in the record indicates that the geologic effect of houses built entirely within the former preservation area was significantly greater than houses partially contained within the area. As the district court noted, construction of houses in the affected area, whether in whole or in part, would necessarily have an effect on soil, traffic, water runoff, and, ultimately, geologic instability.

The fact that more than ten building permits were issued for houses within the former preservation area after the enactment of the ten-house limit does not constitute inconsistent "past practice." Nothing in the record indicates that in issuing these permits previous zoning administrators relied upon interpretations of the ten-house limitation or that they were even aware the limitation existed prior to the landslide in 1998.

## II. Declaratory Judgment Claim

■ Developer next contends the BOCC exceeded its authority by enacting the ten-house limitation. We disagree.

■ Initially, we address and reject the BOCC's argument that, because this was a quasi-judicial proceeding, a declaratory judgment claim was improper. Contrary to developer's contention, the BOCC was not required to file a cross-appeal to raise this argument. See Blocker Exploration Co. v. Frontier Exploration, Inc., 740 P.2d 983, 989 (Colo.1987) (without filing a cross-appeal, appellee may raise any argument in support of the trial court's judgment).

■ Generally, review under C.R.C.P. 57 permits constitutional challenges to legislative actions such as a zoning ordinance or resolution. Tri–State Generation & Transmission Co. v. City of Thornton, 647 P.2d 670 (Colo.1982); Condiotti v. Bd. of County Comm'rs, 983 P.2d 184, 186 (Colo.App.1999). Review under C.R.C.P. 106(a)(4) is available when any governmental body or officer "exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion," see Condiotti v. Bd. of County Comm'rs, supra, 983 P.2d at 186, and is the exclusive remedy for such determinations. Best v. La Plata Planning Comm'n, 701 P.2d 91, 94 (Colo.App.1984).

■ Site specific rezoning accomplished in response to a rezoning application, as opposed to rezoning via an ordinance, is generally considered quasi-judicial for purposes of judicial review. See Snyder v. City of Lakewood, 189 Colo. 421, 542 P.2d 371 (1975) (rezoning is a quasi-judicial function subject to certiorari review), overruled in part on other grounds by Margolis v. Dist. Court, 638 P.2d 297, 305 (Colo.1981) ("We adhere to our holding [in Snyder] that rezoning is quasi-judicial for purposes of judicial review."); Russell v. City of Central, 892 P.2d 432, 436 (Colo.App.1995). However, review under C.R.C.P. 57 may be appropriate when the validity of a statute or ordinance is challenged. See Arapahoe Roofing & Sheet Metal, Inc. v. City & County of Denver, 831 P.2d 451, 454 (Colo.1992); Denver Ctr. for Performing Arts v. Briggs, 696 P.2d 299, 305 (Colo.1985); Native Am. Rights Fund, Inc. v. City of Boulder, 97 P.3d 283, 287 (Colo.App. 2004) ("constitutional questions and challenges to the overall validity of a statute or ordinance are more properly reviewed under C.R.C.P. 57").

Here, developer's declaratory judgment claim challenged the validity of the Jefferson County Zoning Resolution and Land Use Regulation and, specifically, questioned whether these regulations empowered the

BOCC to enact the ten-house limitation resolutions. To the extent this claim includes an allegation that the regulations were insufficiently specific in violation of due process, we will address it.

Zoning decisions are presumed valid, and "a party challenging the constitutionality of a zoning ordinance normally bears the burden of proving the asserted invalidity beyond a reasonable doubt." *Zavala v. City & County of Denver,* 759 P.2d 664, 669–70 (Colo.1988); *see Tri–State Generation & Transmission Co. v. City of Thornton, supra,* 647 P.2d at 676 n. 7.

The General Assembly has delegated zoning and land use regulation to counties. Section 30–28–101, et seq., C.R.S.2004; *see also City of Greeley v. Ells,* 186 Colo. 352, 527 P.2d 538 (1974). Jefferson County's zoning provisions are embodied in the Jefferson County Zoning Resolution and the Land Development Regulation.

Developer concedes that pursuant to these regulations, the BOCC has the authority to regulate the use of land, protect against geologic hazards, and otherwise regulate dwellings. However, relying on *Cherry Hills Resort Development Co. v. City of Cherry Hills Village,* 790 P.2d 827 (Colo.1990), and *Beaver Meadows v. Board of County Commissioners,* 709 P.2d 928 (Colo.1985), developer contends that the ten-house limitation is invalid because it was not specifically articulated in the Jefferson County Zoning Resolution or Land Development Regulation as a condition that may be imposed on planned development to mitigate geologic instability. We do not agree.

Land use conditions imposed by a regulatory board or agency must be sufficiently specific " 'to ensure that any action taken by a county in response to a land use proposal will be rational and consistent and that judicial review of that action will be available and effective' and 'to provide all users and potential users of the land with notice of the particular standards and requirements imposed by the county.' " *Bd. of County Comm'rs v. Conder,* 927 P.2d 1339, 1348 (Colo.1996) (quoting *Beaver Meadows v. Bd. of County Comm'rs, supra,* 709 P.2d at

936) (citations omitted). These requirements "protect against [the] unnecessary and uncontrolled exercise of discretionary power." *Cottrell v. City & County of Denver,* 636 P.2d 703, 709 (Colo.1981).

Accordingly, in *Beaver Meadows,* the supreme court invalidated the county's requirement that the developer improve the condition of an off-site access road because the regulations were "devoid of standards by which the adequacy of an access road [could] be evaluated and remedial measures prescribed" and invalidated a requirement that the developer provide a plan for emergency medical services because the regulations did not indicate such a condition would be a factor in assessing the development. *Beaver Meadows v. Bd. of County Comm'rs, supra,* 709 P.2d at 937. Similarly, in *Cherry Hills,* various requirements imposed by the City of Cherry Hills Village on a planned development were invalidated because the regulations "provide[d] no guidance as to how any negative effects caused by the development must be alleviated." *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village, supra,* 790 P.2d at 832.

However, "a [specificity] requirement, properly applied, does not undercut a desirable degree of flexibility." *Tri–State Generation & Transmission Co. v. City of Thornton, supra,* 647 P.2d at 678; *see also Bd. of County Comm'rs v. Conder, supra,* 927 P.2d at 1348 ("broad criteria such as '[c]ompatability with the surrounding area' and 'harmony with the character of the neighborhood' when applied in conjunction with more specific criteria relating to utilities and traffic" satisfy the specificity requirement) (quoting *Tri–State, supra,* 647 P.2d at 678–79).

Thus, contrary to developer's contention, zoning regulations need not prescribe exact requirements for every aspect of land development. Indeed, rigid zoning regulations, akin to the ten-house limitation at issue here, were expressly rejected in *Tri–State. See Best v. La Plata Planning Comm'n, supra,* 701 P.2d at 95. Instead, such regulations must possess sufficiently specific standards to protect against arbitrary state action, put landowners on notice that such factors are considered in

development approval, ensure that the county's responses over time will be rational and consistent, and enable courts to conduct meaningful judicial review. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village, supra,* 790 P.2d at 832 (absent guidelines, "the City's land use regulation is insufficient to provide" notice to landowners and ensure rational and consistent action and effective judicial review); *Beaver Meadows v. Bd. of County Comm'rs, supra,* 709 P.2d at 937 (county regulations invalid when they are "insufficiently specific to provide the necessary criteria" to evaluate the adequacy of off-site roads); *Tri–State Generation & Transmission Co. v. City of Thornton, supra,* 647 P.2d at 678 ("courts have generally required that standards be incorporated into a planned development ordinance in order to protect against arbitrary state action in violation of the right to due process of law").

Here, the Jefferson County Land Development Regulation seeks to "promote the health, safety ... and welfare of the present and future inhabitants of the County of Jefferson by assuring quality and orderly development of land." Part II, section 9 of the Land Development Regulation, entitled "Geology," requires developers to submit detailed reports concerning geologic conditions and to make recommendations for mitigation.

> Section 9.7 provides, in pertinent part:
> Geologic Mitigation Recommendations: Geologic Mitigation recommendations of the area of investigation ... assure that geologic factors affecting the planning, design, construction, operation and maintenance of engineered structures are recognized, adequately interpreted, and presented for use in engineering practice. The recommendations shall include, if applicable, but are not limited to the following:
> 9.7.1 The geologic processes, constraints, and hazards which will or could affect proposed structures or the intended uses of the site. Recommendations for additional site exploration, testing, development which are necessary to assure adequate performance of mitigation methods.

> 9.7.2 Methods to mitigate adverse geologic conditions on proposed structures.

Section 17(C)(3) of the Zoning Resolution permits the Planning Commission and BOCC to consider the following criteria when reviewing planned development rezoning applications:

> a. All impacts of the proposed use upon property in the surrounding area.
>
> b. The availability of methods of mitigating the negative impacts of the proposed use upon the surrounding area.
>
> c. The compatibility of proposed use with existing and allowable land uses in the surrounding area.
>
> d. The degree of conformance to applicable land use plans.
>
> e. The effect upon the health, safety, and welfare of the residents and landowners in the surrounding area.
>
> f. The criteria set forth in the "Purpose" portion of section 1 of this Zoning resolution and the state law.
>
> g. The adequacy of public services available to serve the proposed use.

In addition, section 17(C)(4) states:

> Among the conditions the Planning Commission is authorized to recommend and the Board of County Commissioners is authorized to require as mitigation are the following .... Building envelope placement to ensure compatibility with the existing and allowable land uses in the surrounding area and to protect wildlife habitat, scenic views, and other environmental qualities in the area.

We agree with the district court that these regulations provide sufficiently specific guidelines. Landowners are put on notice that land development may be subject to restrictions necessitated by geologic hazards. Unlike the emergency medical services requirement in *Beaver Meadows,* these regulations devote an entire section to geology and, more specifically, alert landowners to the possibility that the development plan may be altered to mitigate geologic instability. That is, because the construction of houses, as well as their effect once erected, affect geologic stability, regulations indicating that develop-

ment may be limited by geologic factors, as they do here, alert landowners to the possibility that the number of buildings actually allowed to be built may be limited.

Also, unlike the road access requirement invalidated in *Beaver Meadows*, the regulations here provide a course of conduct by which the effect of the development on geologic stability of land will be assessed. Specifically, the regulations require the landowner to present geologic mitigation recommendations "assur[ing] that geologic factors affecting the planning, design, construction, operation and maintenance of engineered structures are recognized, adequately interpreted, and presented for use in engineering practice," including "[t]he geologic processes, constraints, and hazards which will or could affect proposed structures or the intended uses of the site," and instruct the BOCC to consider "[t]he availability of methods of mitigating the negative impacts of the proposed use upon the surrounding area."

Thus, we agree with the district court that the regulations "provide adequate safeguards to ensure that the BOCC's discretion is not unfettered, [and] ensure that an aggrieved party may seek meaningful judicial review." Accordingly, we conclude that the regulations are sufficiently specific to empower the BOCC to enact the ten-house limitation resolutions.

### III. *Inverse Condemnation Claim*

■ Finally, developer contends the court erred in dismissing its inverse condemnation claim. Again, we do not agree.

The court determined that developer's inverse condemnation claim was unripe because developer had made no attempt to petition the BOCC to change or amend the ten-house limitation. As the court noted, developer did not submit "a rezoning request, a new development plan, or a request for a variance from existing zoning regulations." The court concluded that a final determination had not been made regarding the extent of development on land in the former preservation area and, as a result, developer's inverse condemnation claim was not ripe for review.

Developer argues that submitting petitions to change or amend the ten-house limitation would be futile and that a landowner does not have to seek a change in the zoning requirements to bring a claim for inverse condemnation. We disagree.

■ For a landowner to pursue an inverse condemnation claim, the relevant governmental entity must have reached a final decision determining the permitted use of the property at issue. *Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)); *Beauprez v. Avalos*, 42 P.3d 642, 648 (Colo.2002); *Droste v. Bd. of County Comm'rs*, 85 P.3d 585, 591 (Colo.App. 2003). Accordingly, a final decision is reached, and a takings claim ripens, "once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo v. Rhode Island, supra*, 533 U.S. at 620, 121 S.Ct. at 2459.

Here, the BOCC has discretion to permit further development in the former preservation area. For example, Jefferson County Zoning Resolution § 1(H) permits persons to petition the BOCC for rezoning amendments. *See also* § 4(D)(3)(e). Indeed, the original planned development did not permit any residential development in the preservation area, but a petition from developer's predecessors resulted in a zoning amendment allowing additional residential development.

In addition, the permissible uses of the area are not fully known. Developer has not submitted any applications seeking to alter, revoke, or vary the ten-house limitation. In fact, before the BOA, developer specifically defined the issue as "an interpretation of the Board of County Commissioner's resolutions ... [and] not a request for a variance." The BOCC has not had an opportunity to consider developer's plans for the property, nor has it had occasion to consider any improvements made to the geologic stability of the property that could allow for the safe construction of additional houses. Accordingly, the condi-

tions on which developer would be permitted to construct houses on lots within the former preservation are not "known to a reasonable degree of certainty." *Palazzolo v. Rhode Island, supra,* 533 U.S. at 620–21, 121 S.Ct. at 2459 ("Under our ripeness rules a takings claim ... depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law.").

The judgment is affirmed.

Justice KIRSHBAUM* and Judge METZGER* concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.