**Benjamin B. LIEB, an individual, Plaintiff–Appellant,**

**v.**

**Dixie TRIMBLE, solely in her official capacity as member of the Board of Adjustment for Zoning Appeals for the City and County of Denver; Penny Elder, solely in her official capacity as member of the Board of Adjustment for Zoning Appeals for the City and County of Denver; the Department of Zoning Administration for the City and County of Denver; and Kent Strapko, solely in his official capacity as Zoning Administrator for the City and County of Denver, Defendants–Appellees.**

No. 07CA0417.

Colorado Court of Appeals, Div. III.

April 3, 2008.

Benjamin B. Lieb, Denver, Colorado, for Plaintiff–Appellant.

David R. Fine, City Attorney, Jennifer M. Weflen, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge LOEB.

In this C.R.C.P. 106(a)(4) proceeding, plaintiff, Benjamin B. Lieb, appeals from a district court judgment upholding the decision of the Board of Adjustment for Zoning Appeals for the City and County of Denver, which upheld the Denver Department of Zoning Administration's refusal of Lieb's request to take action against a small residential care facility. We affirm.

## I. Background

As pertinent here, Lieb requested the Department to prohibit a caregiver staff member and her adult daughter from residing in a small residential care facility located adjacent to his residence. The parties do not dispute that the staff member and her daughter reside at the facility. The residential care facility is located in an R–1 zoning district as defined by the Denver Municipal Code.

The Department denied Lieb's request because, under its interpretation of the applicable provisions, Denver's zoning code is silent regarding the challenged use, and the use is not inconsistent with the use of a residential care facility. Lieb timely appealed the Department's decision to the Board.

The Board conducted an administrative review of the Department's decision. It received testimony from a Department representative regarding the Department's interpretation of the Code. After reviewing the evidence, the Board concluded the Department did not err, and that Lieb "failed to present any evidence that would overcome the presumption that [the Administrator's] decisions and those of his staff were correct in determining that the Code did not prohibit more than one on-site staff member" from residing in a small residential care facility.

Pursuant to C.R.C.P. 106(a)(4), Lieb appealed the Board's decision to the district court. The court upheld the Board's decision, finding that its "interpretation allowing a caretaker to reside in a special care home

with the unrelated special care residents is a reasonable interpretation of the pertinent provisions in the Denver Municipal code." This appeal followed.

## II.  Standard of Review

■ Review of a governmental body's decision pursuant to C.R.C.P. 106(a)(4) calls into question the decision of the body itself, not the district court's determination on review. *City & County of Denver v. Bd. of Adjustment,* 55 P.3d 252, 254 (Colo.App.2002)(citing *City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244 (Colo.2000)). Our review is based solely on the record that was before the board, and the decision must be affirmed unless there is no competent evidence in the record to support it such that it was arbitrary and capricious. *Id.* Such review is limited to a determination of whether the board exceeded its jurisdiction or abused its discretion, "as well as whether an erroneous legal standard was applied by the agency." *Quaker Court Ltd. Liab. Co. v. Bd. of County Comm'rs,* 109 P.3d 1027, 1030 (Colo.App. 2004) (quoting *Puckett v. City & County of Denver,* 12 P.3d 313, 314 (Colo.App.2000)). In a C.R.C.P. 106(a)(4) review, an agency's legal conclusions are not reviewed de novo, and will be affirmed if supported by a reasonable basis. *Id.*

■ Administrative proceedings are accorded a presumption of validity and regularity, and all reasonable doubts as to the correctness of administrative rulings must be resolved in favor of the agency. *City & County of Denver v. Bd. of Adjustment,* 55 P.3d at 254; *see Quaker,* 109 P.3d at 1030. The burden is on the party challenging an administrative agency's action to overcome the presumption that the agency's acts were proper. *City & County of Denver v. Bd. of Adjustment,* 55 P.3d at 254.

■ Generally, a reviewing court should defer to the construction of a statute by the administrative officials charged with its enforcement. If there is a reasonable basis for an administrative board's interpretation of the law, we may not set aside the board's decision. *Id.*

## III.  Use of a Residential Care Facility

■ Lieb contends the Board abused its discretion by ruling that the Denver Revised Municipal Code allows a caretaker and her adult daughter to reside in a small residential care facility in addition to eight special care residents.  We disagree, because we conclude the Board's interpretation of the Code is supported by a reasonable basis.

A "small residential care use" is defined as "[a] residential structure which is the primary residence of eight (8) or fewer persons, but housing a number of unrelated persons in excess of the number of unrelated persons allowed per dwelling unit in the zone district or transitional housing of any size."  Denver Rev. Mun.Code 59–2(234).  The Code generally allows no more than two unrelated persons to reside in a typical single unit dwelling located in an R–1 district.  *Id.* 59–2(96).

A small residential care use is a type of special care home.

> A special care home is either a single unit dwelling or a multi-unit dwelling housing a number of unrelated persons in excess of the number of unrelated persons allowed per dwelling unit in the zone district in which the dwelling unit is located, where such persons are living as a single housekeeping unit and are receiving more than twelve (12) hours per day of on-premises treatments, supervision, custodial care or special care due to physical condition or illness, mental condition or illness, or behavioral or disciplinary problems.

*Id.* 59–2(269).  Residential care uses are permitted in R–1 districts.  *Id.* 59–117.

■ The Code also permits accessory uses, as defined by section 59–87, in R–1 districts.  *Id.* An accessory use is a use "clearly incidental and customary to and commonly associated with the operation of the use by right." *Id.* 59–87(b)(1)(a).

> [A]n accessory use is one which is deemed to be permitted by implication where the ordinance is silent on the particular use in issue.  The concept of an accessory use relieves a municipality from attempting to enumerate in the statute every possible approved use, and allows courts to deter-

mine on a case by case basis whether permission for the proposed use has been impliedly granted.

*City of Sheridan v. Keen*, 34 Colo.App. 228, 232, 524 P.2d 1390, 1392 (1974). Accordingly, a use expressly prohibited by the Code cannot be an accessory use. *Id.*

Here, Lieb contends the Code expressly prohibits a staff member and her daughter from residing in a small residential care facility. He argues that the Code prohibits staff members from residing in residential care facilities because section 59–2(234) and (269) of the Code expressly permit special care residents to use residential care facilities as their primary residence, but do not expressly permit staff members to do the same. Lieb also contends that, because section 59–117 prohibits all uses that are not listed as permitted by that section, that section effectively prohibits staff members from residing at residential care facilities.

The Department rejected Lieb's interpretation of the Code. In support of its position that the staff member and her daughter did not violate the Code by residing in the special care facility, the Department argued before the Board that the Code does not expressly address whether caretakers are permitted to reside in residential care facilities. It further argued that the limit of eight persons allowed to reside in a residential care facility relates only to special care residents and not staff members. The Department concluded that the use of a residential care facility as a primary residence by a staff member and her daughter was not inconsistent with residential care use. After hearing evidence presented by Lieb and the Department, the Board concluded that the Department did not err in allowing a staff member and her daughter to reside in a small residential care facility as a use not inconsistent with ·the primary use of the facility.

The issue we must resolve is whether the Board exceeded its jurisdiction or abused its discretion in reaching that conclusion. We must also determine whether the Board's interpretation of the Code is supported by a reasonable basis. *See Quaker*, 109 P.3d at 1030.

Contrary to Lieb's primary contention on appeal, the Code does not expressly prohibit staff members, including caretakers, from using a small residential care facility as a primary residence. The only section cited by Lieb that expressly deals with staff members merely prohibits conditioning permits for transitional housing on the number of staff members. *See* Denver Rev. Mun.Code 59–82(c)(6).

Indeed, by asserting that the Code's express inclusion of special care residents in the class of persons allowed to reside in small residential care facilities implies the exclusion of staff members from that class, Lieb acknowledges that the provisions defining residential care uses do not expressly deal with the issue of staff members residing in special care facilities.

We also reject Lieb's contention that section 59–2(269) expressly requires that any person residing in a special care home receive more than twelve hours per day of special care. On its face, section 59–2(269) defines special care residents and permits them to live together in excess of the number of unrelated persons otherwise allowed by the Code. However, it does not expressly prohibit any person not receiving special care from residing in a special care facility. Because the language of section 59–2(269) is permissive, rather than prohibitive, in our view, it cannot be read expressly to prohibit staff members from residing in special care homes.

Lieb also contends the limit of eight persons residing in small residential care facilities, as imposed by section 59–2(234), expressly prohibits staff members from residing in residential care facilities. However, contrary to Lieb's contention, the eight-person limit does not expressly prohibit staff members from residing in small residential care facilities. Further, to the extent that· Lieb argues that section 59–2(234) permits staff members to reside in small residential care facilities but limits the total number of residents to eight persons, we disagree because we conclude the Board's determination that staff members and their family members do not count to-

ward the limit imposed by section 59–2(234) is supported by a reasonable basis.

Over all, the Board's legal conclusion that the Code does not expressly prohibit staff members from residing in residential care facilities is, in our view, supported by a reasonable basis, and we thus affirm its conclusion. *See Quaker,* 109 P.3d at 1030.

■ We next consider whether a reasonable basis supports the Board's conclusion that a staff member's use of a residential care facility as a primary residence constitutes an accessory use. *See* Denver Rev. Mun.Code 59–87(b)(1)(a); *Sheridan,* 34 Colo. App. at 232, 524 P.2d at 1392.

The principal use permitted in residential care facilities is to provide to special care residents "more than twelve (12) hours per day of on-premises treatments, supervision, custodial care or special care due to physical condition or illness, mental condition or illness, or behavioral or disciplinary problems." *See* Denver Rev. Mun.Code 59–2(269). In our view, the permitted use of providing residents care for more than twelve hours per day reasonably supports the conclusion that twenty-four-hour care is "customarily incident" to providing care for more than twelve hours per day, and is "commonly to be expected." *See Sheridan,* 34 Colo.App. at 232, 524 P.2d at 1392.

Moreover, we also conclude that the intent of section 59–82 to "increase locational opportunities for critically needed residential care facilities" and to prevent the concentration of residential care uses, *see* Denver Rev. Mun. Code 59–82(b)(3)–(4), reasonably supports the conclusion that a residential care facility that provides twenty-four-hour care need not bear the expense of employing additional staff where it can meet its staffing needs with a live-in caregiver.

Here, the Board concluded that nothing in the Code expressly speaks to the issue of twenty-four-hour residential care in a small residential care facility, but that "[g]iven that it might be necessary to have round-the-clock staffing, a live-in staff member and auxiliary staff would be appropriate for such a facility."

We perceive no abuse of discretion in the Board's conclusion that a staff member's use of a residential care facility as a primary residence in conjunction with his or her role as a twenty-four-hour per day caregiver reasonably constitutes an accessory use. *See Sheridan,* 34 Colo.App. at 232, 524 P.2d at 1392. For the same reasons, the Board's conclusion that a family member of a live-in staff member is also permitted to reside in a residential care facility is also, in our view, supported by a reasonable basis.

Finally, contrary to Lieb's contention, we do not discern that the Board's construction of the Code will lead to an absurd result. Lieb contends that, under the Board's interpretation of the Code, an unlimited number of staff and family members could reside in a small residential care facility. However, while we note that our resolution of this case is limited to the facts of one staff member and one additional family member residing in a small residential care facility, the ability of any staff or family members to reside in such a facility will presumably be subject to the requirement that their residency not be inconsistent with the operation of the facility. *See* Denver Rev. Mun.Code 59–87(b)(1)(a).

In conclusion, after according the Board's proceedings a presumption of validity and regularity, and resolving all reasonable doubts in favor of the Board, we conclude Lieb failed to overcome the presumption that the Board's actions were proper. *See City & County of Denver v. Bd. of Adjustment,* 55 P.3d at 254. We perceive no abuse of discretion in the Board's decision, and we conclude the Board did not exceed its jurisdiction and its legal conclusions were supported by a reasonable basis. *See Quaker,* 109 P.3d at 1030.

The judgment is affirmed.

Judge TAUBMAN and Judge HAWTHORNE concur.