**COVERED BRIDGE, INC.,**
**Plaintiff–Appellant,**

v.

**TOWN OF VAIL, a municipal**
**corporation, Defendant–**
**Appellee.**

No. 08CA0178.

Colorado Court of Appeals,
Div. VII.

Oct. 16, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Carlson Carlson & Dunkelman, LLC, Paul Dunkelman, Frisco, Colorado, for Plaintiff–Appellant.

Senter Goldfarb Rice, L.L.C., Eric M. Ziporin, Elliot J. Scott, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this C.R.C.P. 106(a)(4) action for judicial review, plaintiff, Covered Bridge, Inc., appeals from the district court judgment upholding a zoning determination by defendant, the Town of Vail. The question presented is whether the town properly interpreted its code to classify plaintiff's property, which is located approximately four feet above the pavement surface of the street, as a "first floor" or "street level" unit. We affirm.

## I. Background

The following facts are undisputed. Plaintiff owns Unit E of the Covered Bridge Building (the building), which is located at 227 Bridge Street, Vail, Colorado. Bridge Street is a pedestrian mall that connects Vail's downtown parking structure to the base of the mountain and ski lifts. It varies in elevation over its course. Unit E faces Bridge Street. Pedestrians access Unit E by ascending a short flight of stairs. At the top of the stairs is a small landing that provides access to Unit E and two other units through separate doors. The steps rise 3.76 feet above the surface of the street.

Bridge Street is located within Vail's Commercial Core 1 District (CC 1). Under the town zoning code, buildings on Bridge Street are subject to what is referred to as "horizontal zoning," which restricts uses based on the location of a unit within a structure relative to street level or grade. Specifically, there are four levels relevant to permitted uses: basement or garden level, first floor or street level, second floor, and above second floor. The authorized use depends on the floor or level of the property; first floor properties are to be used primarily for retail purposes while second floor properties are permitted a wider variety of uses, including commercial office space.

Plaintiff sought to lease Unit E for uses only permitted in properties situated on the second floor and above. It sought an interpretation from the town that, under the code, Unit E was on the second floor of the build-

ing. After public hearings, the town ultimately disagreed with plaintiff and determined that Unit E was on the "first floor" at "street level" for zoning classification purposes. Plaintiff sought C.R.C.P. 106(a)(4) review by the district court, which affirmed the town's decision, and plaintiff filed this appeal.

## II. Standard of Review

In an appeal of a C.R.C.P. 106(a)(4) action, it is the determination of the governmental body, not of the district court, that is under review. The decision of the governmental body is entitled to deference absent a finding that it exceeded its jurisdiction or abused its discretion, including by application of an erroneous legal standard. *Lieb v. Trimble*, 183 P.3d 702, 704 (Colo.App.2008); *Quaker Court Ltd. Liab. Co. v. Bd. of County Comm'rs*, 109 P.3d 1027, 1030 (Colo.App.2004).

■ Generally, a reviewing court should defer to the construction of legislation by the administrative officials charged with its enforcement. Thus, as long as there is a reasonable basis for a zoning board's interpretation of the law, it will not be set aside. *Lieb v. Trimble*, 183 P.3d at 704; *Quaker Court Ltd. Liab. Co. v. Bd. of County Comm'rs*, 109 P.3d at 1030 ("In a C.R.C.P. 106 review, an agency's legal conclusions are not reviewed de novo, and will be affirmed if supported by a reasonable basis."); *City & County of Denver v. Bd. of Adjustment*, 55 P.3d 252, 254 (Colo.App.2002).

■ Zoning ordinances are interpreted in the same manner as any other form of legislation. *City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1248 (Colo.2000); *Sierra Club v. Billingsley*, 166 P.3d 309, 312 (Colo.App.2007). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Curtis v. Hyland Hills Park & Recreation Dist.*, 179 P.3d 81, 83 (Colo.App.2007) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). An interpretation based on legislative intent prevails over a literal interpretation that would produce an absurd result. *Crowe v. Tull*, 126 P.3d 196, 201 (Colo.2006).

## III. Town's Interpretation of the Code to Subject Units Above Pavement Level to "First Floor" Zoning Was Reasonable

■ Under the code, a "first floor" of a structure is "[t]hat floor of the building that is located at grade or street level." Vail Town Code § 12–7B–3(A). The terms "street level" and "first floor" are not defined further. The code also does not define "second floor" but merely provides, "The following uses shall be permitted on the second floor above grade within a structure ..." Vail Town Code § 12–7B–4(A). The "basement" or "garden level" is defined as "[t]hat floor of a building that is entirely or substantially below grade." Vail Town Code § 12–7B–2(A). The code also does not specifically define "grade," but contains the following references: "GRADE, EXISTING: The existing grade shall be the existing or natural topography of a site prior to construction. GRADE, FINISHED: The finished grade shall be the grade proposed upon completion of a project." Vail Town Code § 12–2–2.

The town interpreted section 12–7B–3(A) of the code to include as first floor units, under certain circumstances, properties located above "street level," reading the phrase "street level" in relation to the ease of pedestrian access from the street pavement to a unit, rather than to precise elevation measurements.

Plaintiff contends that this interpretation misconstrued the code. Specifically, plaintiff argues that the term "street level" is plain, requiring that the entrance to a first floor unit be at the same elevation as the pavement of the street. Because the doorway to Unit E is higher than three feet from the street pavement, plaintiff insists, Unit E is on the second floor. According to plaintiff, were the doorway to Unit E situated at the exact same elevation as the pavement of Bridge Street, with no curbs or steps separating them, Unit E would be at street level. Since it is not, plaintiff asserts, it is located on the second floor.

Because we conclude that the town's interpretation has a reasonable basis, we disagree.

Although the code provides a definition of "street level"—that level of the building that is at "grade or street level"—it is tautological: a building is at "street level" when it is located at "street level." Furthermore, although various types of grades are referred to, including existing and finished, none contains a definition of "street level," or "grade" as it relates to "street level." Thus, it is not self-evident from the plain words of the code exactly where a building level must be located in relation to the pavement in order for it to be considered at "street level."

Plaintiff points out, however, that, in the dictionary, "street" is commonly defined as "a paved road" and "a public thoroughfare especially in a city, town, or village, including all areas within the right of way," *see Webster's Third New International Dictionary* 2259, and "level" is defined, as relevant here, as "an approximately horizontal line or surface" and "such a line or surface taken as an index of altitude," *id.* at 1300. From these definitions, "street level" would be that index of altitude approximately horizontal to the adjacent thoroughfare. Accepting such definitions, we agree that it would not be unreasonable to interpret the term "street level" as the building level that is exactly equal in elevation to the relevant street. Here, that would be a plane approximately horizontal with, or approximately equal in elevation to, that part of Bridge Street abutting the Covered Bridge Building in front of Unit E.

However, for a number of reasons, we agree with the town that it also is reasonable to read the term "street level" to refer to a range of building levels that are approximately equal in elevation to the street, but slightly elevated by the presence of a curb or a small number of steps, that is, levels within reasonable horizontal proximity to, and having direct pedestrian access from, the street even though not situated at the exact same elevation as the adjacent street.

First, this interpretation is reasonable when the definition of "street level" is read in conjunction with related definitions in the code.

Specifically, in the code, while the "first floor" is at grade or "street level," a "base-ment" or "garden level" is described as the "floor of a building that is entirely or substantially below grade." Vail Town Code § 12–7B–2(A). If the basement or garden level is "substantially below grade" then a portion of it, by definition, can be partially above grade, which would necessarily put the floor of the next level up—the first floor—somewhat above grade.

Similarly, although the code does not define "second floor," it does provide: "The following uses shall be permitted on the second floor above grade within a structure." Vail Town Code § 12–7B–4(A). The existence of a second floor above grade logically requires the existence of a first floor above grade. And, contrary to plaintiff's position, the basement cannot serve as the first floor, for purposes of creating a second floor, because a basement is defined as being below grade.

Second, an interpretation regulating street level properties in the CC 1 based on pedestrian access is consistent with the code's expressed intent to balance residential and commercial uses and "to promote a variety of retail shops at the pedestrian level." Ordinance No. 16, Series 1975; *see St. Luke's Hosp. v. Indus. Comm'n,* 142 Colo. 28, 32, 349 P.2d 995, 997 (1960) ("Perhaps the best guide to intent is the declaration of policy which frequently forms the initial part of an enactment.").

Section 12–7B–1 of the code explains the need for horizontal zoning in the CC 1:

> The commercial core 1 district is intended to provide sites and to maintain the unique character of the Vail Village commercial area, with its mixture of lodges and commercial establishments in a predominately pedestrian environment.... The Vail Village urban design guide plan and design considerations prescribe site development standards that are intended to ensure the maintenance and preservation of the tightly clustered arrangements of buildings fronting on pedestrian ways and public greenways, and to ensure continuation of the building scale and architectural qualities that distinguish the village.

Accordingly, as discussed, specific permitted uses are determined by a comparative

classification of building levels as basement, first floor, or second floor properties. However, it is undisputed that the town is located in mountainous terrain and the topography of the relevant section of Bridge Street varies considerably. Unless building levels sloped in exact concert with the ever changing elevation of the adjacent street, there might be only one small spot, or perhaps none at all, where a building level would fit plaintiff's definition of "street level." The result, a town zoned to have basements and second floors with no first floor in between, is semantically absurd. And, as a practical matter, it nullifies the exhaustive list of allowable first floor property uses. Thus, to define "street level" only in terms of a building level's exact quantitative relation to the elevation of the street leads to an absurd result.

Furthermore, an explicit purpose of the horizontal zoning scheme—to encourage retail shops at the pedestrian level—is accomplished by restricting non-retail uses of first floor properties. However, under plaintiff's interpretation, building levels near the street, with easy pedestrian access, would be zoned as basement or second floor properties, thus removing the restrictions adopted to carry out the stated purpose of the horizontal zoning scheme from the very properties situated to further that purpose.

Accordingly, we view as reasonable the town's interpretation of the code to include at "street level" a unit situated within a reasonable height of, and having direct pedestrian access from, the adjacent street. Furthermore, the town did not abuse its discretion by applying that definition of "street level" to determine that Unit E of plaintiff's property, although 3.76 feet above the pedestrian pavement, was on the "first floor" for purposes of horizontal zoning.

The judgment is affirmed.

Judge STERNBERG * and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and